Sam G. HAMPTON, Appellant,

v.

Frank W. SHARP et al., Appellees.

No. 15485.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Nov. 6, 1969.

Rehearing Denied Dec. 4, 1969.

Balasco & Balasco, Donald Lasof, Houston, for appellant.

Miller, Gann & Perdue, Jim M. Perdue, Houston, for appellees.

PEDEN, Justice.

Suit for damages filed by Hampton against the appellees alleging that they willfully and maliciously interfered with his employment and that appellee Sharp committed an assault and battery on him. Hampton perfected this appeal after a non-jury trial resulted in entry of a judgment adverse to him.

Hampton was employed as a bartender by a food and drink concessionaire at the Sharpstown Country Club in Houston. He stayed on when James Sitgreaves entered into an oral agreement with Frank Sharp's agent, Morgan Baker, that Sitgreaves would take over operation of those concessions in return for payment to the owner of a fixed percentage of his gross sales.

Sitgreaves testified that his initial investment was over $8,000.00. Baker testified that Sharp's investment amounted to about $80,000.00 in addition to the buildings. Further, that Sharp used the Club to promote sales of real estate in his Sharpstown addition and to promote his other enterprises in the vicinity. Purchasers of lots in the addition could obtain memberships in the Club at a small fraction of the cost to others.

Baker was manager of the Club; it was owned by a corporation which was owned by Frank Sharp and the members of his immediate family. Sharp and Baker testified that they received a number of complaints from members of the Club that Hampton had made rude, insulting and inappropriate remarks to them. Another witness testified that on the night of June 13, 1966 Hampton persisted in making derogatory remarks to Janet Blair, star of a show being produced at Frank Sharp's Music Theater.

Sharp notified Sitgreaves that Hampton was not to come onto properties he owned, and Sitgreaves told Hampton to stay off Sharp's properties. Hampton apparently bases his first claim for damages on these instructions from Sharp. He complied with them, more or less, although he continued to handle some of his duties for Sitgreaves by telephone, until he returned to the Club on August 16, 1966 at Sitgreaves' request when Baker notified Sitgreaves that Sharp had to have a concessionaire to operate the restaurant and bar at the Club and that Sitgreaves' food and equipment had to be removed. Sitgreaves had been trying to sell his concession.

Hampton went to the bar at the Club, called Baker by telephone and told him he was there. Sharp, Baker, a security guard and another employee went to the bar and Sharp took Hampton by the arm and walked him to Hampton's car. The witnesses did not agree as to whether Sharp struck him or used force to eject him from the building. Nor did they agree as to whether Sharp first asked Hampton to leave before ejecting him.

The trial judge made and filed the following:

## FINDINGS OF FACT

### I.

"At the time Plaintiff, SAM G. HAMPTON, was barred from entering the premises of the Sharpstown Country Club and other properties owned by Defendant, FRANK W. SHARP, the said Plaintiff, SAM G. HAMPTON was an employee of James Sitgreaves.

## II.(A)

"FRANK SHARP, acting through his agent, Morgan Baker, had reserved the right to control James Sitgreaves in the operative details of the food and drink concession, as they pertained to the employment of Plaintiff, Sam Hampton.

## II.(B)

"FRANK SHARP had a superior interest to that of plaintiff in the subject matter concerned in this lawsuit.

## III.

"The barring of HAMPTON from the premises of the Sharpstown County Club interfered with HAMPTON's employment by Sitgreaves.

## IV.

"The interference was a proximate cause of damages to SAM G. HAMPTON.

## V.

"The sum of money which, if paid now in cash, would adequately and reasonably compensate HAMPTON for the damages sustained by him by reason of the interference with his employment with Sitgreaves is $1125.00.

## VI.

"The conduct of SAM HAMPTON prior to June 13, 1966 was of a sufficient nature to prompt FRANK SHARP to believe that the actions of HAMPTON were jeopardizing SHARP'S business interests.

## VII.

"The action of FRANK SHARP, on June 13, 1966, of barring the Plaintiff, SAM HAMPTON, from the premises was a reasonable effort on SHARP'S part to protect and maintain his business interests.

## VIII.

"FRANK SHARP'S conduct, in advising James Sitgreaves that SAM HAMPTON was barred from the premises, was not motivated by Malice or wantonness.

## IX.

"Defendant, FRANK SHARP, did, on August 16, 1966, commit an assault on Plaintiff, SAM HAMPTON, by unlawfully laying his hands on him.

## X.

"Defendant, FRANK SHARP'S, actions toward SAM HAMPTON on August 16, 1966 were made by him in preventing or interrupting the intrusion which had been made by SAM HAMPTON upon the lawful possession of property owned by FRANK W. SHARP.

## XI.

"Plaintiff, SAM HAMPTON, knew at the time he entered the premises of the Sharpstown Country Club on August 16, 1966 that he was barred from the premises by Defendant, FRANK SHARP.

## XII.

That FRANK SHARP used no more force than was necessary toward SAM G. HAMPTON in preventing or interrupting the instrusion upon the property owned by FRANK SHARP.

## XIII.

"That the sum of money, if paid now in cash, which would reasonably and adequately compensate HAMPTON for the physical pain and mental anguish sustained by him as a result of the occur-

rence of August 16, 1966 would not exceed $100.00.

## XIV.

"That the conduct of SHARP, in ejecting HAMPTON from the premises on August 16, 1966, was not motivated by malice or wantonness.

## XV.

"That the punitive or exemplary damages, which should be assessed against Defendant, should they be recoverable for the occurrence of August 16, 1966 would not exceed $400.00.

## CONCLUSIONS OF LAW

### I.

"FRANK SHARP was privileged to interfere in the employment relationship existing between James Sitgreaves and SAM G. HAMPTON if such interference was in bona fide exercise of his own rights or when he possessed an equal or superior interest to that of SAM G. HAMPTON in the subject matter.

### II.

"That FRANK SHARP, having a financial interest in the Sharpstown Country Club, would be privileged to cause James Sitgreaves not to continue the employment relationship with SAM HAMPTON if FRANK SHARP did not employ improper means and acted to protect his own interests from being prejudiced by the employment relationship between Sitgreaves and HAMPTON.

### III.

"FRANK SHARP would be privileged to cause James Sitgreaves not to perform his contract of employment with SAM G. HAMPTON or to prevent SAM G. HAMPTON from performing his contract of employment with James Sitgreaves by in good faith asserting or protecting a legally protected interest of his own which he believed might otherwise be impaired or destroyed by the performance of the contract between Sitgreaves and HAMPTON.

### IV.

"An action for interference with business relations will not lie unless the interference is motivated by malice.

### V.

"An owner of property is not liable for assault for using reasonably necessary force to prevent an unlawful entry on his property. A person having lawful authority to eject another may do so in a proper manner using no more force than is reasonably necessary without thereby rendering himself subject to an action for damages. At the time the Plaintiff entered the premises of the Sharpstown Country Club, he had, by his conduct, previously accepted and acquiesced to the fact that he did not have the right to come on the property without the consent of FRANK W. SHARP.

### VI.

The Plaintiff should, therefore, take nothing from these Defendants since any interference with his business relationship by Defendant, FRANK W. SHARP, was privileged, it having been done in a good faith effort to protect the Defendant's business interests and it having been justified by previous conduct on the part of SAM G. HAMPTON; that any actions taken by FRANK W. SHARP toward SAM G. HAMPTON on August 16, 1966 were made in a reasonable effort to protect an unlawful intrusion upon property owned by FRANK W. SHARP."

Appellant concedes that his points of error directed to the findings of fact consti-

tute only "no evidence" points. They complain of Findings II.(A), II.(B), VI, VII, VIII, X, XII and XIV.

[1–3] We overrule these points. We think no useful purpose would be served by further relating the evidence. Testimony given by Morgan Baker supports findings II.(A) and II.(B); that of Sharp, Baker and Ott supports findings VI, VII, VIII, X, XII and XIV.

We also overrule appellant's assertion that the trial court's second through sixth conclusions of law are erroneous.

We look to the trial court's second and third conclusions. "* * * one is privileged to interfere with a contract between others when he does so in the bona fide exercise of his own rights or when he possesses an equal or superior interest to that of the plaintiff in the subject matter." Terry v. Zachry, 272 S.W.2d 157 (San Antonio, Tex.Civ.App., 1954, writ ref., n. r. e.).

As to the trial court's fourth conclusion, it was stated in Phillips Chemical Co. v. Hulbert, 301 F.2d 747 (Fifth Cir. 1962), that it is settled law in Texas that an action for interference with business relations will not lie unless the interference is motivated by malice.

We turn to the trial court's fifth and sixth conclusions of law. Article 1142 of Vernon's Texas Penal Code states, in part: "Violence used to the person does not amount to an assault or battery in the following cases: * * * (4) In preventing or interrupting an intrusion upon the lawful possession of property. * * *."

■ One who is in lawful possession of property has the right as against an intruder or trespasser to request him to leave, and if he does not go, can use all reasonable means to compel him to leave using no more force than is reasonably necessary. Vann v. State, 43 Tex.Cr.R. 244, 64 S.W. 243 (1900); Escandon v. Pan American Foreign Corp., 88 F.2d 276 (Fifth Cir. 1937).

Appellant next complains of the trial court's having admitted testimony as to the dealings between Morgan Baker and other concessionaires relative to the terms of their contracts. Counsel for appellees stated when the evidence was offered that it was for the purpose of showing Baker's course of conduct in making such contracts.

■ We overrule this point. Even if the testimony should not have been admitted, there is nothing in the record to show that the trial court considered it or gave any weight to it; there is other evidence to support the court's findings as to the terms of the concession agreement between Sitgreaves and Sharp's agent, Baker. If there was any error, it was harmless. Rule 434, Texas Rules of Civil Procedure; Williams v. Ritcheson, 212 S.W.2d 813 (San Antonio, Tex.Civ.App.1948, writ ref.).

Appellant's last point of error states that the trial court erred in striking the appearance and answer of defendants, Janet Blair and Nick Mayo. The record does not show that citation was ever served on either of these defendants, but that an answer was filed in their behalf on January 14, 1967, by the attorneys who answered for the other defendants. On October 30, 1967, the trial court granted a motion to strike the appearance and answer of Blair and Mayo. Affidavits filed by the attorneys representing defendants Sharp and Morgan in support of the motion stated that they filed the answer on behalf of Blair and Mayo as the result of a misunderstanding of Sharp's instructions; that they had never communicated with Blair or Mayo and had never been authorized by either of them to enter the appearance in their behalf. Appellant asserts that the trial court should not have permitted the withdrawal of the appearance and answer after depositions had been taken.

■ We overrule the point. The trial court granted the motion more than fourteen months before trial on the merits was had. The order granting the motion re-

cites that evidence was heard, but the record is silent as to the nature of that evidence. We presume that it supported the granting of the motion. The record does not show that defendants Blair and Mayo had any knowledge of the filing of this suit, that they ever authorized anyone to cause an appearance to be entered in their behalf or that the appellant, Hampton, was prejudiced by the time lapse of eight months between the filing of the appearance and of the motion to strike it.

We find no Texas cases suggesting that leave to withdraw an appearance made by mistake or inadvertence should not be granted. A number of cases from other jurisdictions are cited in paragraph 5 of an article entitled "Appearance—Withdrawal or Vacation," found at 64 A.L.R.2d 1433, to the effect that the trial court should permit withdrawal of an appearance entered by mistake or inadvertence, although in some cases such permission has been denied where it was established that the withdrawal would operate to the prejudice of the plaintiff.

The judgment of the trial court is affirmed.