M. Russ **LIGHT**, d/b/a American Insurance Agency, Appellant,

v.

**TRANSPORT INSURANCE COMPANY**
et al., Appellees.

No. 565.

Court of Civil Appeals of Texas, Tyler.

June 24, 1971.

Rehearing Denied July 22, 1971.

---

Burford, Ryburn & Ford, James H. Holmes, III, Anderson, Henley, Shields, Bradford & Pritchard, L. W. Anderson, Dallas, for appellant.

Rawlings, Sayers & Scurlock, Nelson Scurlock, Fort Worth, for appellees.

**434**

McKAY, Justice.

Plaintiff, M. Russ Light (hereinafter called "Light"), doing business as American Insurance Agency, originally brought this suit against Transport Insurance Company (hereinafter called "Transport"), and Transport Insurance Agency (hereinafter called "Agency"), of Dallas County, and Excess House and its partners, Epstein, Marks & Gerry, of Harris County, for damages for wrongful interference with the insurance business relations existing between Light and H. S. Anderson Truck-ing Company of Port Arthur, Texas (hereinafter called "Anderson"). The pleas of privilege filed by Excess House and its partners to be sued in Harris County were sustained, and that order of the trial court was affirmed on appeal. 419 S.W.2d 223. Pleas of privilege filed by cross-defendants and third party defendants brought in by Excess House were also sustained.

This case was tried on Light's fifth amended petition against Transport and Agency before a jury whose verdict was favorable to Light.[1] The trial court grant-

---

1. "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Transport Insurance Company, through its acts, of writing $10,000.00 combined single limit coverage with the excess to $1,000,000.00 to be placed in non-admitted companies rather than the $100,000.00/$300,000.00 bodily injury and $25,000.00 property damage with the excess to $1,000,000.00 to be placed in non-admitted companies, induced H. S. Anderson Trucking Company not to renew its insurance coverage through M. Russ Light?

Answer 'YES' or 'NO.'
ANSWER    Yes
If you have answered Special Issue No. 1 'YES,' then answer Special Issue No. 2; otherwise, do not answer it.
SPECIAL ISSUE NO. 2:

Do you find from a preponderance of the evidence that without such inducement, H. S. Anderson Trucking Company would, in all reasonable probability, have continued its insurance coverage through M. Russ Light?

Answer 'IT WOULD HAVE CONTINUED' or 'IT WOULD NOT HAVE CONTINUED.'
ANSWER    It would have continued
If you have answered Special Issue No. 2 'IT WOULD HAVE CONTINUED,' then answer Special Issue No. 3; otherwise, do not answer it.
SPECIAL ISSUE NO. 3:

Do you find from a preponderance of the evidence that such inducement by Transport Insurance Company, if any, was done with malice towards M. Russ Light?

Answer 'YES' or 'NO.'
ANSWER    Yes
SPECIAL ISSUE NO. 4:

What amount of money, if any, if paid now in cash, do you find from a preponderance of the evidence, would com-

pensate M. Russ Light for the commissions, if any you find, he would have earned from the H. S. Anderson Trucking Company account for the year 1964 and thereafter?

You are hereby instructed that you may take into consideration the length of time that you reasonably believe, from a preponderance of the evidence, that the Plaintiff would, in all reasonable probability, have continued to write the insurance coverage of H. S. Anderson Trucking Company following the year 1963.

Answer in dollars, if any, and cents, if any, or none.
ANSWER    $15,000.00
SPECIAL ISSUE NO. 5:

What amount of money, if any, if paid now in cash do you find from a preponderance of the evidence that the Plaintiff is entitled to recover from the Defendant as exemplary damages, if any?

You are hereby instructed that Plaintiff is authorized by law to sue for punitive or exemplary damages in an amount found by the jury to be appropriate under the circumstances, if any, when the acts of the defendant show such a conscious and deliberate disregard of the interests of others that his conduct may be called malicious.

In assessing exemplary or punitive damages, if any, you may take into account, among other things, expenses for legal services and legal proceedings and trial preparation, if any, and any other damage which you may feel Plaintiff is entitled to recover by virtue of the intentional wrong, if any, of defendant. You may also consider in assessing exemplary or punitive damages, if any, what sum would be an appropriate amount calculated to deter and/or discourage future acts like or similar to any intentional wrong committed by defendant in this case, if any you have found.

ed Transport's motion for judgment notwithstanding the verdict and entered judgment for Transport and Agency, and Light brings this appeal. It is necessary to state the facts in some detail.

Light was a licensed and recording insurance agent who had written insurance for Anderson for the years 1960, 1961, 1962 and 1963, which insurance included automobile liability and property damage, automobile material damage, general liability, workmen's compensation and cargo insurance. Anderson was in the oil field trucking business in Texas and Louisiana with permits or certificates of convenience and necessity issued by both states and the Interstate Commerce Commission, and during these years, the public liability and the comprehensive general liability coverage for Anderson, written through Light as agent, was $100,000.00 each person, $300,000.00 each accident, and $25,000.00 property damage in policies issued by Bituminous Casualty Company. The workmen's compensation was also written by Bituminous, but the cargo insurance, including marine, was placed by Light with and carried by Niagara Insurance Company.

In July, 1963, Harvey Steely, an account executive for Transport, called on Light and solicited the Anderson account for Transport as well as another trucking company account—Union City Transport. According to Light's testimony, Steely proposed that Transport write coverage for Anderson with a combined single limit policy for $10,000.00 with $990,000.00 excess placed in foreign, non-admitted companies so that Anderson could have the total $1,000,000.00 coverage desired. Steely suggested arrangements could be worked out for Light to receive commissions comparable to those he was then getting from Bituminous. Light testified that he advised Steely that it would be necessary to write $100,000.00/$300,000.00/$25,000.00 limits rather than the $10,000.00 combined single limit because an admitted company was then carrying the higher limits and wanted to continue and that he could not write any coverage in foreign companies below the 100/300/25 limits because to do so would be a violation of the orders and regulations of the Insurance Board of Texas and would likely cause him to lose his license.

Steely testified that he first contacted Anderson on July 30 or 31, 1963, to solicit the Anderson insurance account for Transport, and that Anderson asked that he come back again to further discuss the matter. From the record, it is not shown whether Steely contacted Anderson before his visit with Light.

In September, 1963, Light went to see Anderson and discussed renewal of the coverage with Bituminous Casualty, and Light told Anderson he could not write the proposal made by Steely because the State required limits of 100/300/25 written by an admitted company when there is one willing to do so on such basis. In October, 1963, Light submitted a proposal to Anderson for both the 100/300/25 and the excess desired, and Anderson then told him he "had him beat on costs," but Anderson asked Light to see him again just before December, 1963. On November 28 or 29, Light communicated with Anderson again and was told Anderson was going to place his insurance "with the other company."

Answer in dollars, if any, and cents, if any, or none.

ANSWER    $25,000.00

(The following instructions were given in the charge to the jury):

"You are instructed that the word 'malice' or 'malicious' as used in this charge means ill will, bad or evil motive, or such gross indifference or wreckless disregard of the rights of others as to amount to a willful or wanton act.

"You are instructed that the Defendant, Transport Insurance Company, being in the insurance business, had a legal right to use all lawful means in its effort to acquire the insurance business (various forms of liability insurance and workmen's compensation insurance) of Anderson Trucking Company during the year 1963 when Anderson Trucking Company carried such insurance with one of the companies represented by Plaintiff, M. Russ Light."

John P. Miller, employee of Excess House, testified he was first contacted in late August or early September of 1963 by one Colvin of Pan American Insurance Company who put him in touch with B. P. Stansbury Insurance Agency of Beaumont who had been in touch with Colvin about writing the Anderson risk. Miller met with Stansbury and his salesman, McGee, to discuss coverage for Anderson, and Miller, Stansbury, McGee and Steely communicated with each other several times about Transport writing the primary coverage and Excess House placing the excess with foreign companies. Transport decided to limit the risk on Anderson's coverage to the $10,000.00 combined single limit policy. Excess then had extensive communications with British underwriters of London concerning the conditions, rates and terms for the $990,000.00 excess coverage. Communications were also had between Excess and Transport, and Anderson and Anderson's attorney. Proposals were made to Anderson and changes were made in the proposals to meet Anderson's requirements or those of his attorney.

In early December, 1963, these policies were issued and delivered to Anderson, and H. S. Anderson, President of Anderson, executed an Excess Insurance Affidavit on December 10, 1963, which affidavit stated:

"* * * after diligent effort, to procure from any licensed company or companies the fully amount of insurance required to protect the property, liability or risk desired to be insured, and that he now desires insurance with EXCESS HOUSE of BELLAIRE, Texas, who holds a license to place excess lines of insurance in companies not licensed in Texas, in accordance with the provisions of Chapter 21.38, THE INSURANCE CODE, V.A.T.S.

"The insured further states that the amount of insurance procured from non-licensed insurer or insurers is only the excess over the amount so procurable from licensed companies."

The record shows that Benckenstein, Anderson's attorney, in the presence of a Transport representative, had informed Anderson some time prior to the date of his affidavit, that the excess affidavit would be required of him under the proposal as submitted by Transport and Excess House. Transport's representative at that time verified this was correct.

Transport executed certificates of insurance, as required, to the Railroad Commission of Texas certifying that it had issued to Anderson a policy of insurance with limits of liability of not less than $10,000.-00 for each person, not less than $20,000.00 for each accident, and not less than $5,-000.00 for property damage. These were the minimum limits set by the Railroad Commission order. Transport also issued certificates of insurance to the Louisiana Public Service Commission and the Interstate Commerce Commission, but neither shows certified limits upon its face. The record shows that the policy limits written by Transport provided for a $10,000.00 combined single limit which was the coverage for Anderson but the required limits of Louisiana and the Interstate Commerce Commission were apparently provided by endorsements providing Transport would be liable to the public for the required limits. This is difficult to determine from the record. It is apparent, however, the certificates to the regulatory bodies did not correspond to the liability Transport had to Anderson.

It is shown by the record that by placing the coverage with Transport and Excess House for the year 1964, Anderson effected a savings of $12,846.73 for that year. It was also shown that the Insurance Board controls premium rates for admitted companies but that it has no control of rates charged for foreign or non-admitted companies. It follows that the rate for the excess coverage was less than the rate as would be required by the Insurance Board of Texas to write 100/300/25 in an admitted company before placing the excess with a foreign company. Anderson had a debit

experience with Bituminous which would also have affected its rates for 1964.

After having seen the certificates of $10,000.00 which Transport was writing, Light complained to the Insurance Board of Texas and an investigation was made by the Board which resulted in Transport being required in January of 1964 to raise its limits to $100,000.00/$300,000.00/$25,-000.00, effective January 1, 1964, which was done by endorsements issued by Transport. The result was that Transport's limits were the same as the Bituminous limits had been the previous year (1963), and the same as Bituminous had proposed for the year 1964. Excess House advised the British underwriters of the change in limits required of Transport and such rate adjustments were made as became necessary.

Article 21.38, section 2(c) of the Insurance Code, V.A.T.S., then provided that

when a Texas agent is licensed to write insurance in a nonadmitted or unauthorized company, and he procures a policy or certificate of insurance under such license " * * * there shall be executed by the *insured* an affidavit setting forth facts showing that such insured was unable after diligent effort to procure from any licensed company or companies the full amount of insurance required to protect the property, liability or risk desired to be insured, and further showing that the amount of insurance procured from nonlicensed insurer or insurers is only the excess over the amount so procurable from licensed companies. * * *" (Emphasis ours). Each such affidavit is required to be filed with the State Board of Insurance. The State Board of Insurance, on August 1, 1962, promulgated its official Order No. 4564[2], by which order (Section 4B(1)), the retained automobile liability minimums for primary insurance for an authorized

2. "1. On this day, the State Board of Insurance considered, for regulatory purposes, the proper classification of liability insurance if the liability insurance is written only on an excess loss basis, and if the company agrees only to either indemnify the insured or to pay to the insured, rather than to pay on behalf of the insured, either, the *ultimate net loss* (not to exceed the policy limit, if any) sustained by the insured which is in excess of a retained or otherwise insured requisite minimum limit, or the *ultimate net liability* (not to exceed the policy limit, if any) incurred by the insured which is in excess of a retained or otherwise insured requisite minimum limit.

"2. After having considered generally the subject of insurance issued on an excess loss basis, and after having duly considered in particular the peculiarities and distinguishing characteristics of the excess loss liability insurance coverage hereinabove summarily described, and considering all other relevant matters, the Board finds that such excess liability insurance is an identifiable type and class of insurance, peculiar to other insurances and the subject of separate regulation, and that such insurance is properly regulated under the terms and provisions of Subchapter B, Chapter Five, Texas Insurance Code of 1951, as amended.

"3. After having considered the nature of certain excess automobile liability in-

surance and its departure from the coverage for which the Board has already adopted rules and rates, and after having considered all other relevant matters bearing upon this topic, particularly the authority granted by Article 5.02, Texas Insurance Code of 1951, as amended, the Board finds that excess automobile liability insurance is a type and class of insurance identifiable with other excess liability insurance and may be more properly regulated under the terms and provisions of Subchapter B, Chapter Five, Texas Insurance Code of 1951, as amended, if such excess automobile liability insurance is written only in combination with, is merged into or loses its identity in a single excess insurance coverage or is delineated and enumerated with other specific coverages all of which are written on and cover only the excess over requisite minimum underlying insurances or over requisite underlying self-retained minimum limits (including for emphasis casualty and general liability insurance which is written on an excess loss basis), and if the company (in writing such excess insurance) contracts only to either indemnify or to pay to the insured, rather than to pay on behalf of the insured, the ultimate net loss (not to exceed the policy limit, if any) sustained by the insured which loss is in excess of at least the retained or otherwise insured requisite minimum limit(s) as hereinafter set out,

company were fixed at $100,000 each person, $300,000 each accident, and $25,000 property damage.

By Article 911b, section 13, Vernon's Ann.Civ.St., it is provided that before any permit or certificate of convenience and necessity may be issued to any motor carrier or before any such motor carrier may lawfully operate under such permit or certificate, such motor carrier shall file with the Railroad Commission of Texas bonds or insurance policies issued by an insurance company or bonding company authorized to do business in Texas in an amount to be fixed by the Commission under such rules and regulations as it may prescribe, which bond or policy should provide that the obligor will pay to the extent of *the face amount* all judgments which may be recovered against the motor carrier for personal injuries or property damage arising out of the actual operation of the motor carrier.

█ Rule 301, Texas Rules of Civil Procedure, provides that "* * * upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper * * *." In passing on a motion for judgment non obstante veredicto, the trial court must be governed by the test of whether there is any evidence of probative force sufficient to raise an issue of fact, and any inference that may reasonably be drawn from the evidence must be indulged against granting the motion. If there is any evidence of probative force sufficient to raise an issue of fact, a motion for judgment notwithstanding the verdict must be denied. 33 T.J.2d, section 74, page 588; McDonald, Texas Civil Practice, section 17.32, pocket part page 102; Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206 (1950).

The basis of Light's cause of action is that Transport committed a tort by wrongful interference with an existing business relationship. A general statement of the tort liability for interference is found in 45 Am.Jur.2d, section 1, page 280:

"Generally, the theory of the tort of interference is that the law draws a line

or, the ultimate net liability (not to exceed the policy limit, if any) incurred by the insured which liability is in excess of at least the retained or otherwise insured requisite minimum limit(s) as hereinafter set out. Within these premises, therefore, the Board declares that such type or class of insurance, as herein and hereinafter defined and conditioned, and only as herein and hereinafter defined and conditioned, be excluded from regulation under provisions of Subchapter A, Chapter Five, Texas Insurance Code of 1951, as amended; and Subchapter B, Chapter Five, Texas Insurance Code of 1951, as amended, will hereafter be applicable to the regulation of such type or class of insurance.

"4. For the further purposes of this Order, the type or class of insurance to be regulated and found to be more properly regulated under the terms and provisions of Subchapter B, Chapter Five, Texas Insurance Code of 1951, as amended, and any part of which is hereby excluded from regulation under Subchapter A of said Code is defined and declared to be as follows:

\*       \*       \*       \*       \*

"B. With the exception that the Board may require higher minimums upon any application made to it, the retained or otherwise insured automobile liability minimums shall be one of the following:

"(1) primary insurance written on prescribed forms of not less than $100,000 each person, $300,000 each accident or occurrence as respects bodily injury liability and $50,000 each accident or occurrence as respect property damage liability, except, however, as respects automobiles eligible for family automobile coverage, the minimum property damage liability limit shall be not less than $25,000, or

"       \*       \*       \*

"(3) a retention of liability by the insured of not less than $25,000 per accident or occurrence as respects automobile property damage liability and, if automobile bodily injury liability is included or effected in the coverage provided by the excess policy written, primary automobile insurance on bodily injury liability of not less than $100,000 each person, $300,000 each accident or occurrence, or

"       \*       \*       \*."

beyond which no member of the community may go in intentionally intermeddling with the business affairs of others.

"Not every interference is actionable; the fact that defendant's activity has injured plaintiff's business does not mean that plaintiff necessarily is entitled to a remedy. An injury may be of the kind which, in a relatively free economy, a citizen is obliged to suffer, an injury resulting from lawful competition of which he cannot complain. The courts take the position that if means of competition are fair, advantage should remain where success has put it, but if acts complained of do not rest on some legitimate interest or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed." See also 86 C.J.S., Torts, sec. 43, pp. 955–959.

The recent case of Martin v. Phillips Petroleum Co., 455 S.W.2d 429 (Tex.Civ. App., Houston 14th, 1970, n.w.h.), explains the Texas law as follows:

"Texas courts recognize a cause of action for improper interference with contractual relationships, and the unenforceability of the contract is usually no defense to an action for tortious interference with its performance. Clements v. Withers, 437 S.W.2d 818 (Tex.), where recovery was allowed for tortious inducement of breach of an existing contract; Raymond v. Yarrington, 96 Tex. 443, 73 S.W. 800. Our courts have also recognized a cause of action for tortious and wrongful interference with advantageous business relationships. Cooper v. Steen, 318 S.W.2d 750, 757 (Tex.Civ. App.), no writ hist., and cases there cited. And see Pope v. Garrett, 147 Tex. 18, 211 S.W.2d 559. It need not be absolutely certain that the prospective contract would have been made were it not for such interference. A reasonable assurance thereof in view of all the circumstances, is generally sufficient. 86 C.J.S. Torts § 43, p. 959. But where there is no contract, as here, a party does not have a right to be free from competition, but instead merely has the right to be free from malicious interference with the right to conduct negotiations that have a reasonable probability resulting in a contract. * * *"

■ It seems to be settled in Texas that an action for interference with business relations will not lie unless the interference is motivated by malice. Hampton v. Sharp, 447 S.W.2d 754 (Tex.Civ.App., 1969, writ ref., n.r.e.).

Our task here is to determine whether there is any evidence of probative force that Transport maliciously interfered with the right of Light to conduct negotiations that had a reasonable probability of resulting in a renewal of the insurance of Anderson through Light.

■ Transport's motion for judgment notwithstanding the verdict and its Brief filed here contend that Order No. 4564 of the Board of Insurance is invalid in that there is no statutory authority for such order by the Board. Light contends the order cannot be attacked collaterally, but its validity must be challenged directly in a suit for that purpose filed in Travis County unless such order is void. No contention is made that the order is void on its face and we hold such order is not void on its face, and therefore we agree with Light that the order cannot be attacked collaterally as is being done here by Transport, but such attack must be made directly by a suit in Travis County. Insurance Code, Article 1.04, Article 5.02; Goff v. State Board of Insurance, 319 S.W.2d 383 (Tex. Civ.App., Dallas, 1958, n.w.h.); Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372 (1936); Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364 (1933).

■ We have concluded that the acts and conduct of Transport as shown by the record constitute evidence of probative force that Transport, with legal malice, wrongfully interfered with the business relationship between Light and Anderson,

and that there was a reasonable probability that Light would have been able to procure renewal of Anderson's insurance coverage. Griffin v. Palatine Ins. Co., 235 S.W. 202 (Com. of App., 1921). Bituminous had advised Anderson that it would write the Anderson account only through Light. Transport solicited, and later wrote for Anderson a $10,000.00 combined single limit policy. Anderson desired $1,000,000.00 coverage, and if it accepted Transport's proposal, Transport knew there would be $990,-000.00 excess coverage. Transport in so writing the $10,000.00 combined single limit policy under such circumstances, knowing there would be $990,000.00 written with a foreign company, violated Order No. 4564 of the Board of Insurance. Furthermore, this was a plan by which Transport and Excess could effect lower premiums for Anderson which Light, complying with Order No. 4564, could not meet.

Transport also knew, and confirmed to Anderson, that Anderson, by its officer, would be required under Article 21.38, Insurance Code, to make an affidavit that it could not procure from a licensed company the full amount of insurance desired, and that the amount of insurance procured from a non-licensed company was only the excess over the amount procurable from licensed companies. Transport knew that such affidavit would be false, and, when so executed by Anderson, was in fact false, because Light had proposed to renew the 100/300/25 policy in Bituminous Casualty and to place the excess in Lloyds of London.

Malice was defined in the charge as meaning ill will or evil motive, or such gross indifference or wreckless disregard of the rights of others as to amount to a willful or wanton act. It is said in 86 C. J.S. Torts § 43, page 957:

> "Even though no wrongful or unlawful means are employed to accomplish the result, liability for malicious interference may result from the intentional doing of acts without justification or excuse. Malice, in this connection, is not to be understood in its popular sense of ill will against a person, but in its legal sense, as characterizing an unlawful act, done intentionally without just cause or excuse. * * *"

Light visited Anderson in September of 1963 and discussed renewal with Bituminous Casualty, and in October he submitted to Anderson a proposal for both the 100/300/25 and the excess desired. Anderson told him he "had him beat on costs," but Anderson asked Light to see him again before December, 1963. Miller of Excess cabled London on November 14, 1963, stating:

> "ANDERSON MUST HAVE ALL LLOYDS ALSO WITHOUT WORDINGS ATTORNEY WILL NOT ACCEPT AND AS 30 DAY FILINGS MUST DECIDE BY MONDAY *OR THEY WILL RENEW EXPIRING CARRIER.*" (Emphasis ours.)

This is evidence of probative force that there was a reasonable probability that Light would have procured the renewal of the Anderson coverage.

■ Transport brings a point of error that the court erred in overruling its plea to the jurisdiction. Transport claims that the entire case was transferred to Harris County by the court's order on the plea of privilege of some defendants. We disagree. The cause of action was severable, or joint and severable, and therefore it could be maintained in Dallas County against defendants other than those whose pleas of privilege were granted. Tunstill v. Scott, 138 Tex. 425, 160 S.W.2d 65 (1942).

There are no objections to the charge and no requested issues in the record. The case was fully tried. It is our view that the trial court erred in granting Transport's motion for judgment notwithstanding the verdict.

The judgment is reversed and rendered for the plaintiff Light.

Reversed and rendered.