Robert J. MORRIS, Appellant,

v.

JORDAN FINANCIAL CORPORATION, Appellee.

No. 1107.

Court of Civil Appeals of Texas, Tyler.

March 23, 1978.

Rehearing Denied April 20, 1978.

A. Hardcastle, Jr., Geary, Stahl, Koons, Rohde & Spencer, Dallas, for appellant.

David P. Seikel, Hewett, Johnson, Swanson & Barbee, Dallas, for appellee.

MOORE, Justice.

This is a suit to recover on a promissory note executed in payment of a brokerage commission. Plaintiff, Jordan Financial Corporation, brought suit to recover on a promissory note executed by defendant, Robert Morris, in payment of a brokerage fee as provided for in a contract executed by the parties. Morris denied liability on the ground that the condition precedent to his obligation to pay on the note, as set forth in the contract and the promissory note in question, had not occurred. Morris also counterclaimed, alleging that Jordan Financial tortiously interfered with his business relations with Alex Kallay, the ultimate purchaser under the contract, and North Dallas Bank & Trust Co., the escrow agent.

Trial was had before the court without a jury. The trial court awarded judgment for plaintiff in the face amount of the promissory note and denied defendant recovery on his counterclaim. The trial judge found, inter alia, that the condition precedent to defendant's obligation to pay the brokerage commission effectively occurred, but that, if it did not literally occur, plaintiff as broker was nevertheless entitled to recover the commission due him under the contract. Defendant duly perfected this appeal.

We affirm.

The facts are not in dispute. Plaintiff, Jordan Financial, entered into a contract of purchase and sale with defendant, Robert Morris, for the purchase of 396 acres of land in Collin County, Texas, for and in consideration of $1,667,150. Jordan Financial agreed to execute a promissory note to Morris in that amount and agreed to make an

interest payment on the note in the amount of $120,868.37 on December 31, 1974. The contract between the parties provided that Jordan Financial was to be paid a 6% realtor's commission; however, the contract contained a special condition that the payment of such commission was "contingent" on Morris's receiving the interest payment due on the note on December 31, 1974. Subsequently, Jordan Financial's contract of purchase and sale was assigned to Alex Kallay, who purchased the land under the terms of the contract. Kallay executed a promissory note (the "Original Note") to Morris in the amount of $1,667,150 with interest, in accordance with the contract of purchase and sale. Under the terms of the contract and the promissory note Kallay was obligated to make an interest payment to Morris on December 31, 1974, in the amount of $120,868.37.

After Kallay purchased the land, Morris executed and delivered to Jordan Financial a promissory note (the "Commission Note") in part payment of the brokerage fee as provided for in the contract. The note, which is the basis of the present suit, is in the amount of $50,164.49 and represents one-half of the commission due Jordan Financial under the terms of the contract of purchase and sale. The note recites as follows:

"This note is payable as follows:

On or before December 31, 1974, it being understood and agreed the maker hereof shall have no liability with respect to the payment of this note unless and until said maker shall have received the installment of interest due and payable on that certain promissory note of even date herewith executed by Alex L. Kallay, Trustee, and payable to the order of Robert Morris, in the original principal sum of $1,667,150."

Before the interest payment came due under the $1,667,150 note, Kallay notified Morris that he intended to default on the note. As a result, the parties executed on December 17, 1974, a Modification Agreement whereby Morris and Kallay agreed to amend the Original Note by reducing the principal amount to $1,180,431 and altering the payment terms. Jordan Financial was not a party to, nor did it consent to, the Modification Agreement.

Pursuant to the Modification Agreement, Kallay executed and delivered to Morris a promissory note (the "Modified Note") in the principal amount of $1,180,431, with interest payable beginning December 31, 1974. The Original Note was returned by Morris to Kallay. Under the terms of the Modified Note Kallay was obligated to pay, on December 31, 1974, the sum of $82,823 in interest and the sum of $38,045 on the principal, totaling $120,868, which amount is only 37¢ less than the amount due under the terms of the Original Note. Kallay made this aggregate payment of interest and principal on the due date, and such amount was deposited in escrow to North Dallas Bank & Trust Co.

Under his points of error nos. one and two defendant, Morris, contends that there is no evidence, or insufficient evidence, to support the trial court's finding that the condition precedent contemplated by the contract and the Commission Note had occurred. He argues that the aggregate payment of interest and principal received by him under the Modified Note did not satisfy the condition precedent to his obligation to pay the brokerage fee as specified in the contract and the Commission Note. He takes the position that under the provisions of both the contract of purchase and sale and the Commission Note his obligation for payment of the brokerage fee was conditioned on his receipt of the amount of interest due under the original $1,667,150 note executed by Kallay, i. e., that the condition could only have been satisfied when payment was made exclusively under the terms of the Original Note. Hence he maintains that since the funds received by him on December 31, 1974, represented payment under the terms of the Modified Note rather than the Original Note, and that the amount so paid was an aggregate figure of interest plus principal rather than interest only, the condition precedent specified in the contract and the

Commission Note was not effectively satisfied. We cannot agree with this proposition.

The language of the condition precedent as expressed in the contract of sale and the Commission Note is clear and unambiguous. Defendant was to have no liability on the Commission Note unless and until he received the first payment on the Original Note on December 31, 1974. The first payment on the Original Note executed by Kallay was measured by the amount of interest due on December 31, 1974, in the sum of $120,868.37. The agreement to pay the brokerage fee was thus conditioned on Morris's having received $120,868.37 on December 31, 1974. The fact that such payment was measured by the amount of *interest* due on that date was of no real significance. The significant part of the agreement insofar as the brokerage fee was concerned was that the $120,868.37 payment be timely paid. The only fair and reasonable construction of the condition precedent as set out in the contract and the Commission Note was that if and when Morris received the sum of $120,868.37 on December 31, 1974, Jordan Financial would be entitled to its brokerage fee, regardless of whether such sum was denominated interest, principal, or both.

Although the Original Note executed by Kallay was later modified to reduce the principal and alter the payment terms, defendant nevertheless received on December 31, 1974, pursuant to the terms of the Modified Note, the sum of $120,868, the same amount he would have received as interest under the Original Note, less 37¢. The fact that such sum of money received by Morris represented payment under the terms of the Modified Note rather than the Original Note, and that the amount paid him was an aggregate of the interest plus principal rather than interest only, is irrelevant, since the obligation for the payment of the brokerage fee was conditioned on the receipt of the sum of $120,868.37, and not on the receipt of interest payment exclusively under the terms of the Original Note.

Significantly, defendant does not contend that the 37¢ difference between the amount of money due under the Original Note and the amount actually received under the Modified Note prevented the condition precedent from occurring. Indeed, any such contention would be ruled out under the doctrine of *de minimis non curat lex.* See *Thornhill v. Sharpstown Dodge Sales, Inc.*, 546 S.W.2d 151 (Tex.Civ.App.—Beaumont 1976, no writ). We therefore hold that the condition precedent to defendant's liability for the brokerage fee effectively occurred when he received the payment of $120,868 on December 31, 1974, and as a result Morris on that date became liable on the Commission Note.

In any event we do not believe defendant can avoid responsibility for the payment of the brokerage fee simply by revising the terms of the sale procured by the broker without the broker's consent. It is a general rule in this state that a broker's right to a commission is not affected by the fact that the property is ultimately sold for a greater or lesser price. *Moore v. Sussdorf*, 421 S.W.2d 460 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.). See *Air Conditioning, Inc. v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422 (1952). A broker is entitled to his commission according to the contract if, while his employment is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker. *Frost v. Texas Gulf Sulphur Co.*, 17 S.W.2d 121 (Tex.Civ.App.—Beaumont 1929, writ ref'd). Furthermore, a broker cannot be deprived of his commission by an agreement of cancellation or release made by the seller and purchaser unless with the broker's consent. *Stitt v. Royal Park Fashions, Inc.*, 546 S.W.2d 924 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.); *Miller v. Carlson*, 390 S.W.2d 64 (Tex.Civ.App.—Texarkana 1965, writ ref'd n. r. e.). These rules of law would seem particularly applicable to the instant situation in which the seller and the buyer enter into a Modification Agreement whereby the terms of the original sale and promissory note are altered without the

broker's consent. To hold otherwise would mean that a landowner could deprive a broker of the fruits of his labor merely by changing the terms of the sale procured by the broker. The first and second points are accordingly overruled.

Finally, defendant complains of the action of the trial court in denying him recovery of damages on his counterclaim for tortious interference with his business relations with Alex Kallay and North Dallas Bank & Trust Co. As grounds for a cause of action defendant alleged that Jordan Financial: (1) threatened Kallay with litigation; (2) threatened the bank with litigation; (3) served a writ of garnishment on the bank in an attempt to impound the funds in the escrow account (though no funds were actually impounded); and (4) made Kallay a party to the present suit and falsely alleged in its original petition that Kallay acted with malice in entering the Modification Agreement. He further alleged that such threats of litigation against Kallay forced defendant to indemnify Kallay against a possible lawsuit in the amount of $2,664.45. Defendant contended at trial that such figure represented his actual damages, in that Kallay made a demand of him pursuant to the indemnification agreement for the payment of $2,664, the cost of Kallay's attorneys' fees for defending the action, later dismissed, against him.

■ It has long been held in Texas that interference with another's business relations with a third party is actionable only if the interference is motivated by malice and no useful purpose of the inducing party is subserved. *Delz v. Winfree*, 80 Tex. 400, 16 S.W. 111 (1891); *Davis v. Lewis*, 487 S.W.2d 411 (Tex.Civ.App.—Amarillo 1972, no writ). Furthermore, one is privileged purposely to cause another not to perform a contract or enter into or continue a business relation with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction. Restatement of the Law of Torts, sec. 773. Along the same lines, one is privileged to interfere with a contract between others when he does so in the bona fide exercise of his own rights or when he possesses an equal or superior interest to that of the plaintiff in the subject matter. *Hampton v. Sharp*, 447 S.W.2d 754 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n. r. e.); *Terry v. Zachry*, 272 S.W.2d 157 (Tex.Civ.App.—San Antonio 1954, writ ref'd n. r. e.).

■ As we view the record there is no probative evidence that plaintiff acted with malice in any of its activities alleged by Morris. On the contrary, it appears that Jordan Financial, who had financial interests and legal rights under the contract of purchase and sale and the Commission Note, was merely acting to protect such interests and rights. In these circumstances, and especially in view of our holding that Jordan Financial had a viable cause of action, plaintiff cannot be said to have acted improperly merely by threatening litigation. See *Tidal Western Oil Corp. v. Shackelford*, 297 S.W. 279, 281 (Tex.Civ.App.—Fort Worth 1927, writ ref'd), wherein it is said that the assertion of a legal right affords no foundation for a recovery of damages. As to defendant's contention that plaintiff's allegations in its original petition, namely, that Kallay acted with malice in entering into the Modification Agreement, constitutes a malicious untruth on the part of plaintiff, it must be remembered that great latitude is given a pleader by the Texas Rules of Civil Procedure to allege evidentiary matters and matters of a legal conclusion. Rule 45, Tex.R.Civ.P. Thus, plaintiff's threats of litigation, as well as the allegations in its petition with regard to Kallay do not, as a matter of law, establish malice, which is defined in its legal sense as characterizing an unlawful act done intentionally without just cause or excuse. *Light v. Transport Insurance Co.*, 469 S.W.2d 433 (Tex.Civ.App.—Tyler 1971, writ ref'd n. r. e.). Nor can it be seriously contended that the writ of garnishment served on the bank was a malicious action, since such action was clearly taken for the purpose of protecting plaintiff's interests.

Morris therefore failed to prove a necessary element in his cause of action for tortious interference with his business relations, and the trial court did not err in rendering a take nothing judgment on defendant's counterclaim. Accordingly, the third point is overruled.

Judgment affirmed.