McCelvey Jones 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-200-CV




McCELVEY JONES,




 APPELLANT


vs.





BARRY COUCH, ANCO INSURANCE SERVICES OF TEXAS, INC.,


ANCO INSURANCE SERVICES OF BRYAN/COLLEGE STATION, INC.,

ANCO INSURANCE SERVICES OF HOUSTON, INC. AND

ANCO INSURANCE MANAGERS, INC.,



 APPELLEES



 



FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT



NO. 127,414-C, HONORABLE RICK MORRIS, JUDGE PRESIDING



 




 This case is yet another attempt to resolve by summary judgment a case too
complex to reduce all material factual disputes to questions only of law. Appellant McCelvey
Jones sued Barry Couch and Anco Insurance Services of Texas, et. al. (Anco), (collectively
hereinafter "appellees"), for tortious interference with a contract and tortious interference with
a business relationship. Jones alleged that the appellees tortiously interfered with both his
contractual and business relationship with King's Daughters Hospital (the "Hospital") and
underwriter Myron F. Steves and Company. These relationships stemmed from Jones's
designation as agent of record for the Hospital. The district court granted the appellees' motion
for summary judgment as to both claims. We will reverse the judgment and remand the cause to
the trial court for further proceedings. 



BACKGROUND


 From 1965 to 1987, Jones was the Hospital's agent of record for several lines of
insurance. This relationship required insurance companies to solicit business with the Hospital
through Jones. One of those lines was professional liability insurance. Jones placed that
insurance with United National Insurance Company and reinsured with Employers Reinsurance
Corporation. The underwriter on the policy was Myron Steves and Company, and Jones worked
closely with Buddy Steves (Steves), their employee. 

 During 1985 and 1986, Couch, as an agent for Anco, unsuccessfully attempted to
convince the Hospital to switch its business to his company. In November 1986, the nominating
committee of the Hospital asked Couch to join its Board of Trustees. Couch accepted. According
to Couch, at the time he joined, the Board was already discussing the high cost of premiums on
the professional liability policy. Jones disagrees. 

 In March 1987, Jones and Steves called the business manager of the Hospital and
discussed the concept of self-insurance for the professional liability coverage. Following up on
that call, Jones and Steves made a presentation to the Hospital Board in April 1987. There is
some disagreement in the record as to whether the Board itself instigated the call and presentation. 
In any event, after the presentation, the Board decided to study the concept and appointed a three-person insurance committee for that purpose. Dr. Wilson, the Board chairman, appointed Couch
to the committee as its chairman. Couch's actions as a member of this committee and of the
Board form the crux of this case.

 The committee met from April 1987 to early 1988. Couch claims that the
committee consulted various insurance professionals; however, Jones contends that, other than
Steves, Anco agents were the only insurance experts invited to attend committee meetings. In
September 1987, the Hospital appointed Couch/Anco as agents of record for the purpose of
studying self-insurance. Anco needed the appointment to investigate coverage since Jones was
at that time the Hospital's official, exclusive agent of record for professional liability coverage. 
The agency-designation letter, which was sent to Steves, specified that Jones remained agent of
record for the policies currently in force until renewal, at which time the Board would determine
the agent for the renewal policies. Steves acknowledged Anco as agent of record for the
professional liability self-insurance study and Jones as agent of record for the existing policies. 
 On January 18, 1988, the insurance committee recommended the adoption of the
professional liability self-insurance program, establishment of a trust fund to support it, and action
on all other necessary preliminary steps. Appellees assert that the vote included a
recommendation of Anco as agent; however, that recommendation is not contained in the minutes. 
Two days later, at a Board meeting, Couch reported the insurance committee's recommendation
that the Board adopt the self-insurance program for professional liability coverage. Couch
suggested an insurance consultant would be necessary to administer the program and that the
consultant's fee could be paid by crediting that amount against the premium commissions of the
Hospital's other insurance policies. The insurance committee recommended Couch as consultant
and Anco as agent of record. The minutes do not mention who on the committee made this
recommendation. The Board voted to enact the recommendations, with Couch and one other
member abstaining. Pursuant to these recommendations, the Hospital sent a letter to Steves
appointing Couch/Anco as agent of record for all insurance lines handled through Steves. 

 All of the insurance policies previously procured by Jones were allowed to expire
according to their terms. The self-insurance policy replaced the primary coverage of the
professional liability policy. Couch also obtained a letter naming him agent of record for the
Hospital's other insurance policies, allowing him to replace each of them as they came up for
renewal. No existing insurance contracts were terminated prior to the end their term. (1)



STANDARD OF REVIEW


 There is no dispute about the standard of review of a summary judgment; however,
this Court will set it forth again as guidance in determining whether summary judgment is
appropriate in complex cases such as this one. 



1. The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of
law.


2. In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as
true.


3. Every reasonable inference must be indulged in favor of the non-movant and
any doubts resolved in its favor.



Nixon v. Mr. Property Mgt. Co., 690 S.W.2d 546, 548-9 (Tex. 1985). Further, a defendant who
moves for summary judgment must prove that no genuine issue of material fact exists as to one
or more of the essential elements of the plaintiff's cause of action. See Citizens First Nat'l Bank
v. Cinco Exploration Co., 540 S.W.2d 292, 294 (Tex. 1976). In order to dispose of the entire
case by summary judgment, the defendant must prove that the plaintiff could not succeed, as a
matter of law, on any of the theories pleaded. Delgado v. Burns, 656 S.W.2d 428, 429 (Tex.
1983). If this Court finds that a genuine issue of material fact is present as to any cause of action
in the petition, we must reverse the judgment and remand that cause to the trial court. 



DISCUSSION AND HOLDING


 Jones brings twelve points of error on appeal. In his first point he broadly asserts
that the district court erred in granting the summary judgment. In the second point, he asserts that
a genuine issue of fact existed as to the tortious-interference-with-a-contract theory. In the third
point of error, Jones complains that a genuine issue of material fact existed in regard to the
tortious-interference-with-a-business-relationship theory of recovery. Finally, points of error four
through twelve all contain assertions that portions of the affidavits filed to support the summary
judgment are incompetent summary judgment evidence. Because we conclude that there are
genuine issues of material fact raised by Jones's claim that Couch tortiously interfered with a
business relationship, we will sustain the third point of error. 

 In his motion for summary judgment, Couch asserts that he conclusively disproved
malice, which is a required element of tortious interference with a business relationship. We
disagree. The issue of malice is generally an issue of fact to be determined from the nature of the
acts of interference and other evidence in the case. See Light v. Transport Ins. Co., 469 S.W.2d
433, 439 (Tex. Civ. App. 1971, writ. ref'd n.r.e.) (malice was included in jury issues); see also
Champion v. Wright, 740 S.W.2d 848, 854-55 (Tex. App. 1987, writ denied). In this case,
Couch asserts that he affirmatively disproved actual malice by means of Jones's deposition,
wherein Jones testified that he felt Couch bore him no personal ill-will. However, malice is a
legal term of art and its definition for tortious interference does not require personal ill-will or
actual malice. Donaldson v. Lake Vista Community Improvement Ass'n, 718 S.W.2d 815, 818
(Tex. App. 1989, writ ref'd n.r.e.). 

 The general definition of malice is wrongful conduct for which there is no
justification. One court has suggested that "if the acts complained of do not rest on some
legitimate interest or if there is sharp dealing or overreaching or other conduct below the behavior
of fair men similarly situated, the ensuing loss should be redressed." Light, 469 S.W.2d at 439
(quoting 45 Am. Jur.2d. Interference § 1). Further, that court quoted 86 C.J.S. Torts § 43, 



Even though no wrongful or unlawful means are employed to accomplish the
result, liability for malicious interference may result from the intentional doing of
acts without justification or excuse. Malice, in this connection, is not to be
understood in its popular sense of ill will against a person, but in its legal sense,
as characterizing an unlawful act, done intentionally without just cause or excuse.



Id. at 440; see also Cooper v. Steen, 318 S.W.2d 750 (Tex. Civ. App. 1958, no writ) (Intentional
interference exists where the mortgagor, by false statements to a prospective purchaser, prevented
a mortgagee from selling her house and recapturing her equity, before the mortgagor foreclosed.);
Herider Farms-El Paso, Inc. v. Criswell, 519 S.W.2d 473, 476 (Tex. Civ. App. 1975, writ ref'd
n.r.e.) (intentional interference is doing harmful acts without legal justification or excuse).

 Therefore, the mere absence of personal malice between Couch and Jones does not
entitle Couch to a summary judgment. If the record raises any question whether Couch
intentionally committed wrongful acts interfering in Jones's business relationship, summary
judgment is improper. In this case there is conflicting evidence about Couch's exact role and
influence in the study and authorization of the self-insurance program, as well as the decision to
appoint Couch, not Jones, as agent of record for all insurance lines. Jones's affidavit and
deposition assert that Couch intentionally arranged to exclude Jones from the development of the
self-insurance program and his relationship as agent of record. This assertion creates a fact issue
that Couch's affidavits cannot overcome, no matter how persuasive.

 The record makes clear that Couch was an active member of the committee which
recommended a self-insurance program in which Couch and Anco played an active role as
designers and were to become administrators. Moreover, the design of the program made it
economically beneficial to use the program's consultant as the agent of record for all other
insurance lines, in order to offset the consultant fee against commissions. The net result of the
committee's actions and recommendations was that the agent-of-record relationship for all
insurance lines was moved from Jones to Couch/Anco, the self-insurance program consultants.

 Further, as Jones asserts, the language of the Hospital's by-laws forbids a board
member to "act" as well as "vote" in any matter in which he or she has a financial interest. There
is a clear fact question as to whether Couch violated the by-laws, depending on whether his
participation on the committee and numerous dealings with Anco, Steves, and others constituted
"acting."

 This record reveals the existence of a fact question regarding whether Couch's
conduct was willful, wanton, or an exercise in sharp dealing or unfair business practices. Did
Couch intend to harm Jones's business relationship with the Hospital, separate from any feeling
of personal ill-will? These are issues for the fact finder to resolve. (2) Malice is not disproved by
the statement that the ill-will is not personal; the test expands to include whether the actions were
wrongful. 

 Couch suggests that financial motive is sufficient justification to excuse interference
from being tortious, citing Davis v. Lewis, 487 S.W.2d 411 (Tex. Civ. App. 1971, no writ). 
Lewis held that a finance company's pre-existing financial interest in an automobile gave the
company a right to interfere in negotiations concerning repairs to the auto. Id. at 414. That case
did not create a blanket justification for any interference whatsoever, so long as it provides
financial gain to the interfering party. The Lewis case is inapplicable to these facts. 

 This Court holds that there are genuine issues of material fact that are not resolved
in the summary judgment record in regard to the element of malice necessary to a claim of
tortious interference with a business relationship. Therefore, this claim could not be resolved as
a matter of law on summary judgment and must be remanded to the district court for trial. Since
we are remanding this issue to the district court based on point of error three, we decline to rule
on any of the other points of error. 

 We reverse the judgment of the trial court and remand the cause to the district
court. 



 

 Mack Kidd, Justice

[Before Justices Aboussie, Jones and Kidd]

Reversed and Remanded

Filed: August 12, 1992

[Do Not Publish]
1. This was not true of the workers' compensation policy which was terminated and then
reinstated.
2. Since we find an unresolved fact issue, we decline to consider whether any of the other
actions listed by Jones in this point of error present a genuine issue of fact, or whether they
would raise the issue of malice.