Gary Neil CHAMPION and Charles
Bradford Hankins, Appellants,

v.

Ronald W. WRIGHT d/b/a Attorneys
Reporting Service, Appellee.

No. 04–87–00091–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 30, 1987.

Rehearing Denied Dec. 7, 1987.

Kenneth Beanland, Carl Raymond Crites, San Antonio, for appellants.

Karl E. Hays, David L. Ylitalo, San Antonio for appellee.

Before BUTTS, CANTU and CHAPA, JJ.

## OPINION

CANTU, Justice.

Ronald W. Wright d/b/a Attorneys Reporting Service brought suit against Gary Neil Champion, Charles Bradford Hankins, Toni Powell Berkes and David Steffano alleging that Berkes had breached a non-compete agreement and that the other defendants had tortiously interfered with a contractual and business relationship between Wright and Berkes. Wright's claims against Berkes were settled prior to trial. Steffano did not file an answer and the record is silent as to whether he was ever served, but in any event he did not further participate in the trial.

Wright's cause of action against Champion and Hankins proceeded to trial before a jury and resulted in a judgment being entered in favor of Wright for the amount of $29,136.00 as damages, as well as post-judgment interest at the rate of ten percent per annum. It is from this judgment that both appellants and appellee seek appellate review.

Essentially, the facts are that Berkes was a partner with Wright in Attorneys Reporting Service (ARS), a business that specialized in obtaining medical records for attorneys. Additionally, Berkes was an employee of ARS and was solely responsible for the day-to-day operation of the San Antonio office.[1] In connection with her employment with ARS, Berkes was required to execute a noncompete agreement. The agreement prohibited Berkes from opening, or causing to open, an office for the procurement of medical records within a fifty-mile radius of Wright's three offices in the event Berkes' employment was terminated within a two-year period.

Thereafter, and within the two year period, Berkes left her employment with ARS thus forcing ARS's demise in San Antonio. She accepted employment with Champion, Hankins and Steffano in a similar business operated as Champion Medical Records which directly competed with ARS. The evidence shows that Champion Medical Records was formed only after Berkes was induced to disclose to the appellants the operations of a medical records procurement business.

Appellants' initial point of error multifariously alleges as follows:

The trial court erred in rendering a money judgment in favor of appellee and against appellants for the reason that it is conclusively established under the evidence that defendant Berkes was not an employee of appellee at any time relevant to the lawsuit, the employment contract between appellee and Berkes was without consideration and was contrary to public policy and unenforceable as a matter of law, and appellee was not shown to have suffered any damages.

▪▪▪ Points of error not separately briefed are waived. *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 568 (Tex.1984). In the instant case, appellants' first point groups three separate and independent complaints without benefit of individual record references. The point is technically not properly briefed. Nevertheless, this court is bound to consider a point of error if it directs the attention of the appellate court to the error about which complaint is made. TEX.R.APP.P. 74(d). We address each contention as we perceive the

---

1. Other similar business ventures were operated by Wright in Arlington and Houston.

argument to be from the body of appellants' brief.

In response to special issues, the jury found that a contractual or business relationship existed between Berkes and ARS; and that Champion or Hankins, acting either separately or together, interfered with the contractual or business relationship between Berkes and ARS, which interference was the proximate cause of damages to ARS. The jury further found that Champion or Hankins, acting separately or together with Berkes, interfered or conspired to interfere with ARS's business, which interference proximately caused injury to ARS.

Appellants do not allege that these findings are unsupported by the evidence. Rather, the contention is that appellee was without standing to bring suit on behalf of ARS because he had no individual ownership interest in the entity other than as a partner. We quote directly from appellants' brief:

> It is conclusively established under the evidence that the Attorneys Reporting Service located in Bexar County, the only business involved in this lawsuit, was not a trade name or assumed name of appellee. The Attorneys Reporting Service in Bexar County is a partnership established by defendant Toni J. Berkes, Sue C. Gilbert and appellee Wright.... At all times relevant to the lawsuit against appellants, defendant Berkes was an employee of the partnership, Attorneys Reporting Service, and she was not an employee of the appellee.... His [Wright] only interest in such an event is his derivative interest as a member of the partnership.... As we have seen, the alleged employment agreement between appellee and Berkes was executed at the time of her employment by the partnership not her employment by appellee. Thus, there was no consideration for the agreement and it is void.

■ Rule 93, Texas Rules of Civil Procedure provides in pertinent part:

> A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.

> 1. That the plaintiff has not legal capacity to sue or that the defendant has not legal capacity to be sued.
> 2. That the plaintiff is not entitled to recover in the capacity in which he sues, or that the defendant is not liable in the capacity in which he is sued.
>
> \*　\*　\*　\*　\*　\*
>
> 4. That there is a defect of parties, plaintiff or defendant.
> 5. A denial of partnership as alleged in any pleading as to any party to the suit.
>
> \*　\*　\*　\*　\*　\*

When a plaintiff alleges the existence of a partnership and the defendant fails to deny the status by verified denial, such existence is admitted and may not be controverted at trial. *Washburn v. Krenek*, 684 S.W.2d 187, 191 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Moreover, a failure to file a verified denial under rule 93 challenging a plaintiff's authority to sue under the capacity in which suit is brought results in waiver of such complaint and cannot be raised for first time on appeal. *See Taylor v. Republic Grocery*, 483 S.W.2d 293, 296 (Tex.Civ.App.—El Paso 1972, no writ); *Pierce v. Baker*, 143 S.W.2d 681, 682 (Tex.Civ.App.—Eastland 1940, writ ref'd).

■ There is nothing in the record indicating that appellants ever challenged appellee's authority to bring suit against appellants in the capacity in which it was done. Appellee's *First Amended Petition* averred:

> Now comes Ronald W. Wright d/b/a Attorneys Reporting Service d/b/a Metroplex Reporting Service, Inc....

Appellants' First Amended Answer does not challenge either the existence of a partnership nor appellee's capacity to sue on behalf of the partnership. Therefore, the complaint as to standing is waived.

■ Appellants fail to demonstrate how the contract between appellee and Berkes was without consideration. Neither was there an attempt to do so at the trial level. Furthermore, failure of consideration is a defense that must be specifically pled under oath. *See* TEX.R.CIV.P. 93(9). In the absence of such verified plea, the issue is

not before us for review. *See Widmer v. Stamps*, 663 S.W.2d 875, 881 (Tex.App.— Houston [14th Dist.] 1983, no writ).

■ Appellants' assertion that the covenant not to compete is against public policy and unenforceable as a matter of law is but a bare blanket statement without support in argument or authority. In order for this Court to give proper consideration to appellants' contention, argument in their brief should include a fair condensed statement of the facts pertinent to such points with reference to the pages in the record where the same may be found and such discussion of the facts and the authorities relied upon as may be needed to support the point of contention. TEX.R.APP.P. 74(f). Failure to properly brief error results in waiver of the alleged error. *Beaty v. Bales*, 677 S.W.2d 750, 758 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

Finally, we are unable to address appellants' complaint that appellee failed to show that he suffered any damage because there is a total failure to brief this contention. We will not speculate upon the nature of appellants' argument. The matter is not properly before us, and error, if any, is waived. *Beaty v. Bales, supra.*

Appellants' point of error one is overruled.

Appellants' point of error two complains that the trial court erred in submitting, over timely objection, portions of special issues one and two which referred to a "business relationship" and interference therewith because such submission is allegedly without support in the pleadings.

Special Issues No. 1 and No. 2 stated:

### Issue No. 1

Do you find from a preponderance of the evidence that a contractual *or business* relationship existed between Toni Berkes and Attorneys Reporting Service?

### Issue No. 2

Do you find from a preponderance of the evidence that Gary Champion or Charles Hankins, either separately or together, interfered with the contractual *or busi-*

*ness* relationship identified in Issue No. 1?

Appellants' objection to the submitted special issues was as follows:

Now comes Kenneth Beanland, attorney for defendants Charles Hankins and Gary Champion, and submits the following objections to the charge of the court.

Defendant objects as to Special Issue No. 1 for the reason that it is not raised by the pleadings and also not couched in terms of any time element as to when there may have been a business relationship between Toni Berkes and Attorneys Reporting System.

Defendants object to Special Issue No. 2 for the reason that it is conditioned upon Special Issue No. 1. What has been plead is an allegation that the defendants interfered with the employment and agency agreement that was admitted into evidence as Plaintiffs' Exhibit No. 2. What has been submitted was an inquiry as to whether Hankins and Champion interfered with contractual or business relationships. That is not raised by the pleadings.

Appellee's First Amended Original Petition alleged in pertinent part:

... Defendants misappropriated trade secrets and confidential information, customer lists, documents and supplies from plaintiff in order to open-up Champion's Medical Records Service. Defendants offer similar and identical services as were offered by Plaintiff in the same geographic territory where Defendant Berkes had worked for Plaintiff. In addition, Defendants have contacted customers of Plaintiff and made and appropriated the business of said existing customers.

\* \* \* \* \* \*

Defendants, Gary Champion, David Steffano, and Charles Bradford Hankins d/b/a Champion's Medical Records Service wrongfully interfered with the prospective and existing contract rights between Plaintiff and Defendant Berkes. The employment agreement between Plaintiff and Defendant Berkes establish-

es existing contract rights or in the alternative creates a reasonable probability that Plaintiff and Defendant Berkes would have continued in employment and that Defendant Berkes would not open or cause to open an office within a 50 mile radius of any of the offices of Plaintiff for the procurement of any type of medical records.

■■■ It is clear to us that the portions of the petition above quoted refer to interference by appellants with existing contractual and prospective business relationships between appellee and Berkes. Both causes of action are recognized in Texas. *Gonzalez v. Gutierrez*, 694 S.W.2d 384, 388 (Tex. App.—San Antonio 1985, no writ) (Texas recognizes tortious interference with both business and contractual relations); *see Raymond v. Yarrington*, 96 Tex. 443, 73 S.W. 800 (1903) [interference with existing contract]; *Cooper v. Steen*, 318 S.W.2d 750 (Tex.Civ.App.—Dallas 1958, no writ) [tortious and wrongful interference with business relationships]. It was not necessary for appellee to specifically use the term "business relationship" in his pleading so long as the wording of the petition made apparent the gist of the complaint. We hold that it did.

At no apparent time did appellants complain that the petition was ambiguous and failed to give proper notice of the causes of action alleged. Nor are we now directed to any claim of surprise or showing of prejudice. Before we may hold that a variance between the pleading and proof requires reversal, it must be shown that the variance was so substantial as to be misleading, surprising, and prejudicial. *See Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 937 (Tex.1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). We find that the pleadings are not susceptible of such criticism. Appellants' point of error two is overruled.

Point of error three complains of the trial court's refusal to submit to the jury a requested special issue on breach of covenant. Appellants requested the following special issue be submitted to the jury:

Do you find from a preponderance of the evidence that Toni Berkes opened or caused to be opened an office for the procurement of medical records within a 50 mile radius of any of the offices of ARS within a two-year period from the time of termination of the agency agreement dated August 24, 1979, and admitted into evidence as Plaintiffs' Exhibit No. 2?

In view of the fact that appellee's cause of action against Berkes passed out of the case before trial proceeded against appellants, there was no need to inquire into the existence of a breach. The remaining causes of action encompass only interferences with existing and prospective relationships and in no way require the finding of a completed breach.

■■■ The essential elements of a claim for tortious interference with an existing contract are:

1. a contract existing that was subject to interference;

2. the act of interference was willful and intentional;

3. such intentional act was a proximate cause of plaintiff's damages, and

4. actual damages or loss occurred.

*Bellefonte Underwriters Ins. Co. v. Brown*, 663 S.W.2d 562, 573 (Tex.App.— Houston [14th Dist.] 1983), *aff'd in part, rev'd in part on other grounds*, 704 S.W. 2d 742 (Tex.1986). While the elements of tortious interference with a business relationship[2] are for the most part similar to those for tortious interference with an existing contract, the former clearly embraces all intentional invasions of contractual relations regardless of whether a breach of contract is actually induced. *Compare Griffin v. Rowden*, 702 S.W.2d 692, 693 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (elements for interference with con-

---

**2.** Sometimes referred to as interference with prospective advantage. *See Prosser and Keeton on Torts*, 5th Edition, Chap. 24, § 130, pp 1005–1031 or interference with economic expectancies, *see* Perlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine*, 49 U.Chi.L.Rev. 61 (1982).

tract or relationship) *with State Nat'l Bank v. Farah Mfg. Co., Inc.,* 678 S.W.2d 661, 689 (Tex.App.—El Paso 1984, writ dism'd by agr.) (no actual breach required for interference with existing contract).

We hold that it was unnecessary for the trial court to submit an inquiry into the existence of a breach. Moreover, Special Issue No. 2 required that the jury find that appellants interfered with appellee's contractual or business relationship. An affirmative finding was made by the jury upon this issue. This was all that was required. Appellants' point of error three is overruled.

■ Appellants next argue that the trial court erred in failing to sustain their Motion for Judgment Non Obstante Veredicto. Appellants' reasoning is that Berkes' relationship with appellee and with ARS was allegedly terminable at will by either party since appellee had the legal right to persuade or attempt to persuade Berkes to exercise that right if a legitimate purpose of their own was served.

Appellants' argument seems to be that a contract terminable at will is incapable of being the subject matter of tortious interference. The precise question has been addressed in an exhaustive opinion found in the case of *Deauville Corp. v. Federated Dept. Stores, Inc.,* 756 F.2d 1183 (5th Cir. 1985). In that case, the court could find no reason to disallow an action for interference with an at-will contract. In arriving at its conclusion, the Court recognized that Texas law has long protected business relationships less complete, as well as those more complete, than contracts terminable at will. *See id.* at 1195. Moreover, a research of Texas case law indicates a large body of decisions allowing tortious interference claims for interference with terminable-at-will contracts, although none discuss the issue. *See, e.g., Top Value Enter., Inc. v. Carlson Mktg. Group,* 703 S.W.2d 806, 809–10 (Tex.App.—El Paso 1986, writ ref'd n.r.e.) (trading stamp co. liable for

grocers' breach of existing term contracts); *Diesel Inj. Sales & Serv., Inc. v. Renfro,* 656 S.W.2d 568, 573 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (must show proximate cause of employment contract breach); *Hampton v. Sharp,* 447 S.W.2d 754, 758 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.) (must show malice in interference with employment). We agree with the logic of the *Deauville* opinion and hold that a contract terminable at will may be the subject matter of a tortious interference.[3]

Judgment non obstante veredicto is only authorized in cases in which instructed verdict would have been proper or where special issue finding has no support in the evidence. *Wagner v. Betts,* 496 S.W.2d 190, 193 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.). Therefore, if any testimony of probative force as raises an issue of fact is introduced, a motion for judgment non obstante veredicto must be overruled. *See Dunlop Tire & Rubber Corp. v. Slack,* 276 S.W.2d 400, 401 (Tex.Civ.App.—Fort Worth 1955, no writ). The existence of an at-will contract does not as a matter of law entitle appellants to entry of a judgment non obstante veredicto where the evidence supports a finding of an intentional interference. We overrule appellants' point of error number four.

■ In their point of error number five, appellants complain that the trial court erred in rendering judgment in the absence of a jury finding that the interference was motivated by malice. It is settled law that interference with business relations, in order to be actionable, requires a showing that the interference was motivated by malice. *See Hampton v. Sharp,* 447 S.W.2d 754, 758 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.).

Special Issue No. 2 submitted to the jury reads in pertinent part:

In answering Issue No. 2, you are instructed that in order to find that a party interfered with a contractual or business

---

**3.** *Cf.* Restatement (Second) of Torts, Sec. 768(1) (1979). This section lists the elements required for a competitor to be privileged in causing a third person not to continue a terminable-at-will contract. By implication, if these elements are not met and no privilege exists, the interference with a terminable-at-will contract may be found tortious.

relationship, you must find that the interfering party had actual knowledge of the contractual relationship or business relationship in question or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of such contractual or business relationship.

In answering the above issue, you are instructed that Defendants' actions may be excused if such actions were privileged or resulted from legitimate business considerations. You may find that a privilege existed only if you determine that the actions of the defendants constituted reasonable competition. You are instructed that reasonable competition is limited to what is considered "fair play." If the means of competition are fair, you may find that a privilege exists, however, if the acts complained of do not rest on some legitimate interest or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, you must find that the actions were not privileged.

No objection to the foregoing instruction was made by appellants. Nor is there any indication that appellants ever specifically complained of a failure to charge on malice. ▆ A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. TEX.R.CIV.P. 274. When one or more of the elements of a ground of recovery are submitted to the jury and one or more of the elements are omitted, a failure to object to the omission waives a jury trial upon the omitted element or elements, and any complaint is deemed waived. *Accent Bldrs. Co., Inc. v. Southwest Concrete Systems, Inc.*, 679 S.W.2d 106, 110–11 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Therefore, the omitted issue is deemed found by the court in support of the judgment. TEX.R. CIV.P. 279. *See City of Houston v. Black*, 571 S.W.2d 496, 496 (Tex.1978). ▆ We hold that the element of malice is deemed found as a result of appellants' failure to comply with the objection requirements of Rule 274. But we need not rely entirely upon appellants' waiver.

Special Issue No. 2 required the jury to find that appellants acted with required knowledge that a particular relationship existed and nevertheless overreached. It is the intent with which a party interferes that makes the interference actionable, particularly so if he acts for an improper purpose. Thus, it is not necessary that the issue be phrased in terms of "malice" if in fact the intent required to be found is one giving rise to a knowing or purposeful interference for an improper purpose. *See generally Prosser and Keeton on Torts*, 5th Edition, Sec. 129.

We hold that the jury finding on Special Issue No. 2 afforded the requirement that the interference be motivated by malice.

Appellants' point of error number five is overruled.

Point of error six complains that appellee should be permitted to recover only one-half of the amount awarded by the trial court because of appellee's relationship to the partnership and, further, that appellants should receive credit for the ten thousand dollar judgment taken against Berkes. Once again appellants rely upon their argument advanced under point of error number one wherein they challenge appellee's authority to proceed against them in the capacity in which suit was brought. For the same reasons previously stated under point one, we reject appellants' continued efforts to belatedly raise capacity to sue as an appellate issue. ▆ We further reject appellants' contention that the award be reduced by the amount of the judgment entered against Berkes. In the Second Restatement of Torts it is written:

The fact that the plaintiff may have a cause of action against the person who has broken his contract does not prevent recovery against the defendant who has induced or otherwise caused the breach, or reduce the damages recoverable from him. The defendant and the contract breaker are both wrongdoers, and each is liable for the entire loss that he has caused. Even a judgment obtained for breach of the contract if it is not satisfied

does not bar or reduce recovery from the one who has caused the breach. But since the damages recoverable for breach of the contract are common to the actions against both, any payments made by the one who breaks the contract or partial satisfaction of the judgment against him must be credited in favor of the defendant who has caused the breach.

Restatement (Second) of Torts, Section 774A (1979). Thus it is clear that, while appellants may be entitled to credit for partial satisfaction of the judgment against them, we are not at liberty to reduce the award of damages actually entered. Appellants' final point of error is overruled.

By crosspoint, appellee complains that the trial court erred in modifying the judgment and in disregarding the jury's response to Special Issue No. 4(c). Special Issue No. 4 inquired:

What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate Attorneys Recording Service for the injuries suffered by it as a proximate result of the interference identified in Special Issue No. 2?

(a) lost profits for 2 years;
$ 29,136.00

(b) losses incurred other than lost profits;
–0–

(c) loss of potential profits for 2 years.
$ 2,913.60

No objection was made by appellants to the submission of Special Issue No. 4. However, by Motion for New Trial, appellants for the first time complained that the jury's response to inquiry 4(c) constituted a double recovery. The argument advanced was that the "potential profits" could not be distinguished from the "lost profits" inquired about in Special Issue No. 4(a). Appellants asked that the trial court disregard the jury's answer to 4(c). The trial court responded to appellants' request and modified the award entered by deleting the sum of $2,913.60.

Appellee states that the amount of money awarded by the jury in response to question 4(c) is readily distinguishable from the amount awarded in response to question 4(a). We agree.

At trial, appellee testified that Attorneys Reporting Service had a yearly income of approximately $72,000.00 per year and that for a two-year period the gross income would have been $144,000.00. Appellee also testified that of the $144,000.00 gross income approximately forty percent or forty-five percent was considered profits. Based on these figures, appellee surmised that he had lost $57,000.00 in profits for a two-year period. Upon being cross-examined, appellee reduced his profit margin figures to an amount constituting 20% rather than the original 40% to 45% he had testified about on direct examination. Based upon the 20% profit figure appellee lost $29,000.00 for the two-year period, an amount in line with that found by the jury. Appellee's testimony, however, made clear that his figures did not include any percentage of growth. The figures given by appellee clearly represented losses suffered without regard to future growth of appellee's business. Appellee testified that a ten-percent yearly growth rate was a conservative estimate of how Attorneys Reporting Service grew and expanded on an annual basis. It is apparent that the jury awarded $29,136.00 as compensation for money that appellee would have lost had appellee's business not expanded and then awarded an additional 10%, or $2,913.60, to compensate appellee for the profits he would have made had his business been allowed to grow.

We agree with appellee that the trial court's action in decreasing the award is unjustified and deprives him of full compensation for the damages suffered. Additionally, we think that appellants' complaint came too late. Objection should have been lodged in a timely fashion before the case went to the jury. *Dayton Hudson Corp. v. Altus*, 715 S.W.2d 670, 674 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *cert. dism'd*, —— U.S. ——, 107 S.Ct. 2471, 96 L.Ed.2d 364 (1987). Objections to the jury charge may not be raised

for the first time on a motion for new trial or appeal. TEX.R.CIV.P. 274.

We sustain appellee's first crosspoint and restore the award of $2,913.60.

 Appellee's other crosspoint complains of the trial court's refusal to allow him a postverdict trial amendment seeking prejudgment interest and in refusing the prejudgment interest sought. The jury's answers to the special issues were returned and received by the trial court on November 6, 1986. Sometime before the entry of judgment, appellee requested the trial court to grant him a trial amendment seeking prejudgment interest. This request was denied as reflected by the judgment entered on January 28, 1987.

Rule 66 of the Texas Rules of Civil Procedure provides that the trial court may freely allow trial amendments "when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits." The trial court is granted broad discretion under this rule which will be overturned only upon a showing of abuse of discretion. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 634 (Tex.1986). The test for determining whether the trial court abused its discretion is whether the trial court acted arbitrarily and unreasonably. *See id.* at 635.

Although prejudgment interest is a form of damages, there is no special issue needed since the trial court awards the prejudgment interest based upon jury findings of past damages. For the same reason, evidence of prejudgment interest would not be proper during trial on the merits. As recognized in *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 26 (Tex.1987):

> ... The recovery of prejudgment interest does not require any evidentiary proof at trial. It simply requires a mechanical application of the *Cavnar* formula by the trial court after the verdict has been returned. This being the case, Benavidez' trial amendment could not have caused any surprise or prejudice to Isles Construction Company. We hold the trial court's refusal of the amendment was

arbitrary and unreasonable and therefore an abuse of discretion.

We find nothing in the record indicating that appellants were surprised or prejudiced by appellee's request for prejudgment interest. Indeed, appellants did not request oral argument nor have they responded to appellee's crosspoint complaining of the trial court's refusal to grant prejudgment interest other than to urge that no motion seeking such interest was ever before the court. The record belies this position. Clearly the trial court considered the request as reflected by the judgment.

We find no reasonable grounds in the record for a denial of prejudgment interest, and therefore we conclude that the trial court's refusal of the post-trial amendment was arbitrary and unreasonable and, consequently, an abuse of discretion. We sustain appellee's crosspoint number two.

Insofar as the trial court's judgment denies appellee recovery of potential profits in the amount of $2,913.60 as found by the jury in response to special issue 4(c), it is reversed and ordered reformed to include this amount as damages. Insofar as the judgment denies prejudgment interest on past damages, it is reversed and remanded to the trial court for computation of prejudgment interest in accordance with the guidelines set out in *Cavnar v. Quality Control Parking*, 696 S.W.2d 549 (Tex. 1985). In all other respects, the judgment of the trial court is affirmed.