**JULIETTE FOWLER HOMES, INC. et al., Appellants,**

v.

**WELCH ASSOCIATES, INC., Appellee.**

No. 11–87–121–CV.

Court of Appeals of Texas, Eastland.

May 26, 1988.

Rehearing Denied June 30, 1988.

---

Corbet F. Bryant, Jr., Carrington, Coleman, Sloman & Blumenthal, J. Carlisle De-Hay, Jr., Kevin J. Cook, DeHay & Blanchard, Dallas, for appellants.

John M. Zukowski, Campbell, Athey, Zukowski & Bresenhan, Houston, for appellee.

ARNOT, Justice.

Welch Associates, Inc., a professional fund raiser, sued Juliette Fowler Homes, Inc., an affiliate of the Disciples of Christ Church, for breach of their contract and for tortious interference with its contractual relations with John W. Butler and John W. Butler Companies, Inc., Welch's local representative in a capital fund drive it was directing for Fowler. Further, Welch sued the Butlers for breach of their contract and for tortious interference with its contractual relations with Fowler. Fowler and the Butlers appeal the judgment against them in the amount of $65,664.91 actual damages, $10,000.00 exemplary damages against Butler, $1.00 exemplary damages against Butler Companies, attorney's fees in the amount of $92,789.79, and interest.

Fowler appeals urging in 38 points of error that: (a) there is no evidence or insufficient evidence to support the jury's findings; (b) the non-competition clause in the Butler contract is unenforceable, therefore, Fowler did not tortiously interfere with the contract; and (c) Fowler had contractual authority to terminate its contract with Welch, therefore, as a matter of law, Fowler did not breach its contract. Butler appeals urging in 27 points of error that: (a) there is no evidence or insufficient evidence to support the jury's findings; (b) that as a matter of law Butler could not have tortiously interfered with the Fowler contract because Fowler had an absolute right to terminate its contract; and (c) that they could not have breached the contract because the non-competition clause is unenforceable. For the reasons discussed, we affirm the judgment of the trial court.

A charitable non-profit corporation, Juliette Fowler Homes, Inc., operates a campus situated on a 15½-acre tract in Dallas, Texas, and provides residences for the elderly who can live independently, a home for the aged in need of intermediate care, and residential treatment for moderately disturbed adolescents. Fowler is an agency of the National Benevolent Association (NBA), a general unit of the Disciples of Christ (Christian) Church. The NBA is responsible for the Christian Church's work in health and social service activities throughout the United States. Several of the primary individuals running the programs of Fowler are employed by NBA on the campus of Fowler. The NBA reports to the General Board of the Christian Church.

In 1981, Fowler undertook a feasibility study to implement a fund raising cam-

paign for much needed capital improvements to its campus. It contacted Welch Associates, Inc., to provide these services. Welch Associates is a professional fund raiser with two primary officers-employees: Byron Eugene Welch and his octogenarian father, Paul Welch. Byron Welch, an ordained minister in the Christian Church, entered into the fund raising business in 1962 and had completed several fund campaigns. He frequently lectures at the National Society of Fund Raising Executives seminars. After being contacted by Fowler, Welch performed an internal audit, identified potential donors, and developed a plan of action titled the Fowler Fund. Even though the goal in dollars to be raised envisioned by the plan was equal to the sum total of all outreach given by all Disciples of Christ Churches in Texas, Louisiana, and New Mexico based on the aggregate given for all causes involved in missions and outreach for 1979 and even though the goal in dollars to be raised envisioned by the plan was nearly twice the current total assets, $6.6 million, of Fowler and even though there was currently a major fund drive known as the Christian Church in the Southwest Campaign which involved essentially the same donors, Welch predicted success for the Fowler Fund in the plan. Welch received $7,500.00 for his work.

On July 1, 1981, Fowler and Welch entered into a contract to implement the Fowler Fund. Welch was to be responsible for every major decision and to provide all the personnel to run the campaign. Welch's plan contemplated employing five positions: the General Senior Development Funds Counsel or Senior Counsel, Development Funds Co–Counsel or Co–Counsel, Senior Resident Campaign Director, Resident Office Clerk Campaign Secretary, and Field Director. Welch was to be the Senior Counsel and was to receive as a fee $717,-300.00 with an additional $250,000.00 for expenses for the full term of the contract which expired December 31, 1984. The contract contained the following cancellation provisions:

> This agreement may be cancelled by either party with the cancellation to be effective sixty (60) days after the mailing or personal delivery of a written notice of cancellation.

Welch employed John Butler for the position of Senior Resident Campaign Director. Butler, an active fund raiser since 1970, had substantial experience in this field. Butler's duties included the day-to-day management of the Fowler Fund. The employment contract was executed by Welch and John Butler Companies, Inc. John Butler was the only employee provided by Butler Companies.

The Butler Contract contained the following non-competition clause:

> The employees of John W. Butler Companies, Inc., upon acceptance of this contract, agree that no disclosure of any confidential information will be given to any third party at any time; and further, that during the life of this contract, and for a period of two (2) years after conclusion of this contract, The John W. Butler Companies, Inc., will not enter into any form of contract for services, directly or indirectly, with any client of Welch Associates, Inc., past or present, including Juliette Fowler Homes, Inc., any agencies of the National Benevolent Association, St. Louis, Missouri, without the expressed written consent of Welch Associates, Inc.

The Butler Contract further provided the following cancellation clause:

> The contract may be terminated as follows—with forty-five (45) days written notice by either party in the event of unforeseen or unusual circumstances such as loss of the Fowler Contract by Welch Associates, Inc.

In 1983, three events occurred. First, Jimmy Hays, the Development Director employed by the NBA and assigned to Fowler, resigned. The Development Board of Fowler had over the term of his employment expressed dissatisfaction with Hays' performance. By mutual agreement, he

resigned; and a search committee was formed to find his replacement. The Director of Development was in charge of deferred gifts, such as wills; the annual fund, which included collecting from churches; and public relations. The Director was not directly related with the Fowler Fund.

Second, Fowler became increasingly dissatisfied with the results and direction of the Fowler Fund campaign. Welch wanted to take the campaign "public." Officers at Fowler and members of the Board wanted to concentrate their emphasis on large gifts and tried to modify the plan. Members of the Development Board expressed their concern about the excessive amount paid to Welch as a fee in relation to the total funds raised through his efforts. Welch had expended all of the $250,000.00 expense allowance and had collected pledges and gifts totaling less than $4.4 million while a year still remained on the contract.

Third, Welch and Butler became dissatisfied with each other's performance. Welch believed Butler was committed to other projects and not spending enough time on the Fowler Fund. Butler disagreed with the direction Welch took the campaign and contended that he did not receive the volunteer support in local cities targeted for contribution as promised by Welch. Butler tried to resign; and Welch, to entice him to remain, increased his salary.

In January of 1984, NBA asked Butler to consider the job previously held by Jimmy Hays. In February of 1984, Butler asked for release of the Welch contract so that he might be considered for the NBA position. On April 14, 1984, Fowler sent Welch notice of its intent to cancel its contract in 60 days. On April 24, 1984, Butler notified Welch by telegram of its intent to cancel its employment contract after 45 days. On July 1, 1984, after the 60–day period had elapsed, Butler went to work for NBA. Responsibility for what was left of the Fowler Fund was eventually transferred to the new Director of Development, John Butler.

Welch sued for $111,165.91 (the amount it claimed was the unpaid contractual compensation due it), for $1,000,000.00 representing reduced earnings in the Dallas–Fort Worth area, for punitive damages in the amount of three times actual damage, and for attorney's fees.

In its petition, Welch alleged that Fowler breached its contract by failing to implement it in good faith, by terminating the contract in bad faith, and by hindering Welch's performance. Further, Welch alleged that Fowler tortiously interfered in its contract with Butler, encouraging Butler to terminate his employment contract. Also, Welch alleged that John Butler and Butler Companies breached their contract by divulging privileged information and violating the terms of the non-competition clause. Alternatively, Welch alleged Butler tortiously interfered with the Fowler contract, encouraging Fowler to terminate Welch and replace its services with Butler.

In answer to special issues, the jury found the following:

(a) that Fowler did not have a good faith reason for terminating its contract with Welch and that such termination was a proximate cause of Welch's damages;

(b) that Fowler tortiously interfered with Welch's contractual relationship with Butler and that the interference was a proximate cause of Welch's damage;

(c) that Butler and Butler Companies acted with malice and tortiously interfered with Welch's contractual relationship with Fowler and that the interference was a proximate cause of Welch's damages;

(d) that John Butler intended to be personally bound by the terms of the non-competition clause; and

(e) that Butler and Butler Companies breached the non-competition clause of their employment contract with Welch.

In their Points of Error Nos. 6, 7, 8, 9, 10, 15, 16, 26, and 27, the Butlers allege

they could not, as a matter of law, breach the non-competition clause because it is overly broad; it contains no geographical limitation; it restrains a "common calling" and, therefore, is void and unenforceable; and, if enforceable, there is no evidence or, in the alternative, insufficient evidence to support the jury's findings. In their Points of Error Nos. 11, 12, 13, and 14, the Butlers urge there is no evidence or, in the alternative, insufficient evidence to support the jury's finding that John Butler intended to be personally bound by the non-competition clause. In its Points of Error Nos. 18, 19, 20, 21, 22, 26, 27, and 28, Fowler urges that the jury erred in finding that it tortiously interfered with the Butler–Welch contract because, as a matter of law, the non-competition clause is unenforceable; and, if enforceable, there is no evidence or insufficient evidence to support the finding.

█ A covenant restraining an employee from competing with his employer on termination of the employment is valid if it is reasonable in view of the circumstances of the particular case. *Weatherford Oil Tool Company v. Campbell*, 161 Tex. 310, 340 S.W.2d 950 (1960). Whether a covenant not to compete is reasonable is a question of law for the court. *Henshaw v. Kroenecke*, 656 S.W.2d 416 (Tex.1983). A covenant is unreasonable "if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted." *Weatherford Oil Tool Company v. Campbell*, supra at 951.

█ A covenant not to compete must meet four criteria in order to be deemed reasonable: (a) it must be necessary for the protection of the promisee; (b) it must not be oppressive to the promisor and the restrictions to time, territory and activity in the covenant must be reasonable; (c) it must not be injurious to the public; and (d) the promisee must give consideration. See *Bergman v. Norris of Houston*, 734 S.W.2d 673 (Tex.1987); *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (Tex.1987).

█ Appellants urge that the clause is overly broad, unreasonable, has no territorial limit, seeks to restrict a "common calling," and is, therefore, void. We disagree.

The non-competition clause, as it applies to appellants in this case, states:

> The employees of the John W. Butler Companies, Inc. ... agree ... that during the life of this contact, and for a period of two (2) years after conclusion of this contract ... Butler Companies, Inc., will not enter into any form of contract for services ... with ... Juliette Fowler Homes, Inc., any agencies of the [NBA] ... without the expressed written consent of Welch.

By its own terms, the Butler contract did not expire until September 21, 1984, unless terminated upon 45 days notice. The non-competition clause covered not only the Butler Companies but also its employees. John Butler was the only employee of Butler Companies. Butler testified that the Butler Companies was a structure for him to do business through. Butler went to work for NBA and was assigned to work for Fowler within two years of the conclusion of the contract.

The non-competition clause as to this particular employer, NBA/Fowler, is not overly broad or unreasonable. Once the campaign started, Welch only acted in a supervisory capacity. All the real work of solicitation was being performed by Butler. It would make economic sense for Fowler not to pay Welch and employ Butler directly. Welch had a legitimate business interest to protect. The non-competition clause is not oppressive to Butler. Butler had extensive experience helping raise funds for the Campus Crusade for Christ. He continued to work for other charitable organizations while working on the Fowler Fund. This restriction was only to clients of Welch. Also, the time of two years is not an unreasonable restriction. Further, appellants complain that there is no territorial limitation. However, none is needed. There is only one Juliette Fowler Homes and one National Benevolent Association in exist-

ence. Further, the non-competition clause is not injurious to the public and is supported by consideration. We are of the opinion that the clause is reasonable.

Fund raising or development work for a charitable organization is not a common calling. Although it does not require a license, raising millions of dollars from donors requires considerable expertise. Finding the non-competition clause to be reasonable, we address appellants' "no evidence" and "insufficient evidence" points.

■ To maintain an action for interference with the contract, it must be established: (a) that there was a contract subject to interference; (b) that the act of interference was willful and intentional; (c) that such intentional act was a proximate cause of plaintiff's damage; and (d) that actual damages or loss occurred. *Armendariz v. Mora*, 553 S.W.2d 400 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

■ A "no evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of the evidence of a vital fact; (2) the court is barred by rules of law of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Insurance Company v. Thomas*, 678 S.W.2d 278 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). In determining a "no evidence" point, we consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. In determining a challenge to the factual sufficiency of the evidence, we must consider all the evidence in the case, both in support of and contrary to

the finding, to determine if the evidence is factually sufficient to support a finding of a vital fact. *Pool v. Ford Motor Company*, 715 S.W.2d 629 (Tex.1986).

Dr. James Howard Brandt, Pastor of the First Christian Church of Pinesville, Louisiana, had been the administrator of business and finance for Juliette Fowler Homes and was responsible for the business office functions, personnel, accounting, maintenance, and purchasing. In this capacity, he had daily working relations with Edward Lawrence Dowell, Executive Director of Juliette Fowler Homes.

■ Brandt testified that in the early part of 1983, Mr. Dowell and Mr. Welch were in disagreement over the way the campaign was being conducted. He further testified that Dowell was going to assume control over the campaign and do what he could to keep Welch off campus. Further, Dowell believed that it would be good for Fowler if Hays was no longer Director of Development and if Butler could be moved into his position and could assume total responsibility of development for Fowler, including the campaign that Welch was doing. In late 1983, Dowell and Butler were reluctant to take the campaign "public" as recommended by Welch. After the notice of termination, according to Brandt, Dowell took the files of the Fowler Fund so "Byron [Welch] won't come back and get them." Further, Brandt testified Dowell feared review by the full Board of Fowler of his actions to terminate Welch's contract.

Although he testified to the contrary to many of the above facts, Dowell did testify that he was very concerned and insecure about the progress and direction of the fund under Welch's leadership.

Appellants attempted to impeach Brandt as being a disgruntled former employee discharged because of extramarital relations with another office employee. However, as ultimate judge of a witness' credibility, the jury can believe all, part, or none of the testimony of a witness. *Cox v.*

*Johnson,* 638 S.W.2d 867 (Tex.1982); *Coastal Transmission Corporation v. Lennox,* 331 S.W.2d 778 (Tex.Civ.App.—San Antonio 1960, no writ).

Further, the termination notice dated April 14, 1984, from Fowler to Welch stated:

> Effective tomorrow, April 15, 1984, The National Benevolent Association has employed John Butler to serve as NBA Director of Development at Juliette Fowler Homes, Inc. This action was endorsed by the Juliette Fowler Homes Board of Directors at the quarterly meeting today. Per instruction of the officers of the Board in meeting this date, and in concert with Mr. Richard Lance, President of The National Benevolent Association, we are hereby providing notice of the exercise of the 60 day proviso contained within our contract of July, 1981.

Butler gave his notice by telegram on April 24.

The evidence is factually sufficient to support the jury's findings that Fowler tortiously interfered. Appellants' points of error are overruled.

We next address the Butlers' Points of Error Nos. 1, 2, 3, 4, and 5 alleging that, because Fowler had an absolute right to terminate the Welch contract upon a 60–day notice, Butler could not have tortiously interfered with the contract as a matter of law, and in the alternative, that there is no evidence or insufficient evidence that Butler interfered with the Welch contract. The Butlers argue that the Fowler contract is a contract terminable on notice and, therefore, cannot be tortiously interfered with under Texas law when canceled pursuant to its notice provision.

▮ This argument has been recently addressed in *Champion v. Wright,* 740 S.W.2d 848 (Tex.App.—San Antonio 1987, writ den'd). The court in *Champion* held that the existence of an at-will contract does not, as a matter of law, bar recovery on a tortious interference claim. See also *Deauville Corporation v. Federated Development Stores, Inc.,* 756 F.2d 1183 (5th Cir.1985). When a contract provides expressly that it is subject to termination upon notice, the general rule is that each party to the contract has the legal right to cancel the contract and that a third party has the legal right to persuade or attempt to persuade a contracting party to exercise that right *if a legitimate business purpose of the third party is being served. Kingsbery v. Phillips Petroleum Company,* 315 S.W.2d 561, 576 (Tex.Civ.App.—Austin 1958, writ ref'd n.r.e.). See also *C.E. Services, Inc. v. Control Data Corporation,* 759 F.2d 1241 (5th Cir.1985).

▮ In reviewing the "no evidence" and "insufficient evidence" points using the standards described earlier, the evidence shows the following. Butler's purpose was to replace Welch as director over the Fowler Fund project. He made major alterations in the plan. He did not carry out the plan as directed by Welch. To become director over the Fowler Fund, Butler would have to breach his non-competition agreement with Welch. This is not a legitimate business purpose. These points of error are overruled.

▮ In its Points of Error Nos. 29, 30, and 31, Fowler urges that there is no evidence or insufficient evidence to support the jury's findings that Fowler's interference with the Butler contract damaged Welch in the sum of $65,665.91. Fowler argues that the jury imposed as damages for the interference the balance of payments that were not made to Welch under its contract with Fowler.

Paul Welch, the bookkeeper for Welch Associates, Inc., testified as to the amount remaining on the contract. Had Fowler not terminated the contract, Welch would have received the sum of $65,665.91 as fee for the remainder of the contractual term. Had Fowler not interfered with the Butler contract, it may not have been necessary to terminate Welch's services. Using the standards of review for "no evidence" and

"insufficient evidence" points discussed earlier, we find the jury had sufficient evidence to assess Welch's damage at $65,-665.91 for Fowler's tortious interference. These points are overruled.

Because the evidence is sufficient to support the jury's findings that Butler and Butler Companies breached their contract and tortiously interfered with the Fowler contract and that Welch tortiously interfered with Butler's contract, it is not necessary to address the remaining points of error.

By cross-point, Welch urges that the trial court erred in not awarding it attorney's fees against John Butler, individually, and against Fowler. Any complaint that Welch might have had has been waived because Welch did not timely except to the judgment, give notice of appeal, or in any way inform the trial court it was dissatisfied with the judgment entered. *West Texas Utilities Company v. Irvin,* 161 Tex. 5, 336 S.W.2d 609 (Tex.1960); *Puckett v. First City National Bank of Midland,* 702 S.W.2d 232 (Tex.App.—Eastland 1985, writ ref'd n.r.e.).

The judgment of the trial court is affirmed.