**Gloria A. JASSO, Relator,**

v.

**The Honorable Bob ROBERTSON, Judge of the 308th District Court, Harris County, Texas, Respondent.**

No. 01–89–00356–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 24, 1989.

Doris A. Stewert, Stewart & Stewart, Houston, for relator.

Mary Heafner, Heafner, Miller & Assoc., Houston, for respondent.

Before EVANS, C.J., and DUNN and MIRABAL, JJ.

Opinion

PER CURIAM.

The relator, Gloria A. Jasso, seeks relief from respondent's order appointing the real party in interest, Nikoles Rocha, temporary managing conservator of their son, Nicholas Rocha. A history of the underlying litigation will assist in understanding the issues involved.

On February 3, 1989, Nikoles Rocha filed a petition for divorce and suit affecting the parent-child relationship and sought appointment as managing conservator of their son. Nikoles had possession of Nicholas before he filed suit. Relator answered with a general denial and the following allegations among others:

> The parties were married informally in January, 1987, and ceased to live together as husband and wife on or about January 19, 1989.

. . . .

Petitioner and respondent are the parents of the following child of this marriage who is not under the continuing jurisdiction of any other court:

NAME: Nicholas Ryan Rocha SEX: Male

BIRTHPLACE: Houston, Texas BIRTH-DATE: October 6, 1988 PRESENT ADDRESS: Unknown

Relator also filed a cross-action. The answer and cross-action sought the entry of temporary orders and the appointment of relator as sole temporary managing conservator.

On February 10, the respondent signed a temporary restraining order and order setting a hearing on relator's request for temporary orders for February 21, 1989. A copy of this order was served on Nikoles on February 13, 1989.

On February 17, relator filed a first amended answer and cross-action. Relator omitted the above quoted allegations and sought dismissal of Nikoles' petition because he was not the "legal father" of the child and because there was no marriage. On February 17, relator filed an application for writ of habeas corpus seeking the return of the child to relator's possession contending that the court must rule on the marriage issue before determining custody.

On February 20, relator filed a second amended cross-action. On February 21, respondent conducted a hearing on relator's motion to enter temporary orders and on the application for writ of habeas corpus. At the hearing, Nikoles' attorney was allowed to withdraw. The respondent then reset the hearing on the application and questioned the parties regarding the custody of the child. Relator admitted that Nikoles is the biological father of the child. Nikoles stated that he had taken the child from relator because the child was sick; that he sought medical treatment for the child; and the child recovered but was still on medication. Nikoles also stated that a babysitter cared for the child while he was at work each day. Relator's attorney objected to the questioning on the ground that custody of the child could not be determined because there was never a marriage, and Nikoles was not the "legal father" of the child, but did not ask respondent to allow her to present evidence supporting her allegations. Respondent overruled the objection.

Respondent ruled that, during the pendency of the suit, relator would have possession of the child on Wednesdays. Relator's attorney again objected:

And Your Honor, I object. We are here today to proceed with the hearing. There was a hearing without presenting other evidence without having my witnesses show that there was no marriage, without having my other witnesses—

THE COURT: It's overruled, counsel. I have ruled.

Respondent further ordered that relator would have possession of the child on weekends and Nikoles would have possession at all other times. Respondent then directed Nikoles to draft the order. The respondent set the hearing on the application for writ of habeas corpus for March 10 and told Nikoles that he must submit the drafted order, signed by opposing counsel, by 4:00 p.m., March 1. On March 1, the respondent signed the order submitted by Nikoles, although it was not signed by opposing counsel.

On March 6, relator filed a motion to sign temporary orders, which included what she contends is the proper order. On March 10, respondent conducted a hearing on the application for writ of habeas corpus and on relator's motion to enter temporary orders. Relator's counsel stated that she received a copy of Nikoles' order at 11:30 a.m., February 28 and that she disagreed with the contents of the order. She further stated that, on February 28, she informed the court's coordinator by telephone that she disagreed with Nikoles' proposed order and that she would file a motion to enter relator's temporary orders. Relator's attorney did not file an objection to Nikoles' order on or before March 1.

Nikoles' attorney then sought dismissal of the application for writ of habeas corpus. The respondent granted the motion stating that temporary orders had already

been signed and entered. *See* Tex.Fam. Code Ann. sec. 14.10 (Vernon 1986). The respondent advised relator that she could file a motion to vacate the temporary orders and that he would set it for a hearing.

On March 13, relator filed a motion to vacate temporary orders and to grant a writ of habeas corpus. She claimed that her federal and state rights to due process of law were violated because she had no opportunity to be heard on her objections to Nikoles' order. She further claimed that her equal protection rights were violated because a docket entry reflected Nikoles' statement to the court's clerk that relator's attorney would not sign the proposed order, and relator was not allowed to speak with the respondent. She again asserted that there was no marriage and that Nikoles was not the "legal father" of the child. A hearing on the motion to vacate temporary orders was set for March 17.

On March 16, the respondent signed an order denying relator's application for writ of habeas corpus that he had ruled on orally in the hearing on March 10.

On March 22, respondent conducted a hearing on relator's motion to set aside the temporary orders. Relator claimed that the respondent had no authority to enter the orders because the parties were never married and because Nikoles is not the "legal father" of the child. Relator called no witnesses and introduced no testimony regarding the existence of the marriage. Nikoles introduced relator's original answer containing the admissions of marriage and paternity into evidence. During the hearing, the respondent made the following inquiry:

Now, I tell you what I am going to do in this case. I am not going to vacate the TOs. However, if it's agreeable with counsel and if it's not, just say so, we will have another hearing. But at this time, I have been studying and considering this case and I think the proper temporary orders would be that we establish a joint custody temporarily until this case can be adjudicated, giving equal time to the petitioner and the respondent. You agree or disagree?

RELATOR'S COUNSEL: I disagree.
RESPONDENT: All right. Then we will set it down for another hearing.

More discussion followed, and the hearing was terminated. Relator then filed her motion for leave to file petition for writ of mandamus.

■ Relator first contends "[t]he court had no jurisdiction and was without authority to award custody to the biological father" because Nikoles had no standing to file a suit affecting the parent-child relationship. A "parent" of the child in question may bring an original suit affecting the parent-child relationship. Tex.Fam. Code Ann. sec. 11.03(a)(1) (Vernon 1986). A male "parent" is defined as "a man as to whom the child is legitimate or a man who has been adjudicated to be the biological father by a court of competent jurisdiction ... but does not include a parent as to whom the parent-child relationship has been terminated." Tex.Fam.Code Ann. sec. 11.01(3) (Vernon Supp.1989). Legitimacy is covered by Tex.Fam.Code Ann. sec. 12.02 (Vernon Supp.1989):

(a) A child is the legitimate child of his biological father if the child is born or conceived before the marriage of his biological father and mother. A child is rebuttably presumed to be the legitimate child of a man if the child is born during the marriage of or within the period of gestation following the dissolution of the marriage of the man and the mother of the child.

(b) A child is the legitimate child of his biological father if at any time his mother and biological father have attempted to marry in apparent compliance with the laws of this state or another state or nation, although the attempted marriage is or might be declared void, and the child is born or conceived before or during the attempted marriage.

(c) A child is the legitimate child of a man if the man's paternity is established under the provisions of Chapter 13 of this code.

A trial court may make any temporary order for the safety and welfare of the child including an order for the temporary

conservatorship of the child. Tex.Fam. Code Ann. sec. 11.11(a)(1) (Vernon 1986).

Relator argues that because she has denied that there was a marriage, Nikoles cannot establish standing under section 12.-02(a) and (b). Further, although relator admits Nikoles is the biological father, she contends that he has no standing because there has been no adjudication by a court of competent jurisdiction that Nikoles is the biological father. Sec. 11.01(3).

The record reflects prima facie that, for the purposes of standing, Nicholas is the legitimate child of Nikoles. First, relator's original answer, which was admitted into evidence at the March 22 hearing, constitutes an admission that the parties were married in January 1987 and that the child was born on October 6, 1988 during the marriage. *Drake Ins. Co. v. King*, 606 S.W.2d 812, 817 (Tex.1980); Tex.Fam.Code Ann. sec. 12.02(a). Second, relator admitted that Nikoles is the biological father of the child. Third, Nikoles attached to his original petition an affidavit in which he swears that he is the father of the child and refers to relator as his "wife." Fourth, a certified copy of the child's birth certificate attached to Nikoles' petition identifies Nikoles as the father and lists the child's last name as "Rocha." Finally, relator never raised the issue of Nikoles' standing to sue by filing a verified denial asserting he does not have the legal capacity to sue. *Champion v. Wright*, 740 S.W.2d 848, 851 (Tex.App.—San Antonio 1987, writ denied); Tex.R.Civ.P. 93(1). There is prima facie evidence that Nikoles has standing to sue; therefore, the temporary orders are not void due to lack of standing.

■ Relator next contends that the temporary orders are void because her federal and state constitutional rights to due process have been violated. U.S. Const. amends. V, X, IV; Tex. Const. art. I, sec. 19. She contends that the temporary orders were entered before there was a hearing, thereby foreclosing any opportunity for her to present evidence. Sec. 11.-11(a)(1), (2), (5). We disagree.

Respondent signed the temporary order after the first hearing.

The respondent conducted three hearings during which relator could have introduced her evidence. We have found no instance where relator attempted to produce evidence but was prohibited from doing so by respondent. Further, in any instances where relator concluded that she was being prohibited from introducing testimony, we have found no attempt by her to make a bill of exceptions containing the evidence in question. We also note that, at the March 22 hearing on relator's motion to vacate temporary orders, relator called only the court's clerk to the stand and no other witnesses. Nowhere in the record before us is there evidence that relator claims she was prevented from introducing. Relator was not denied a hearing or the opportunity to produce evidence, and, therefore, has shown no violation of her federal and state due process rights.

■ Finally, relator contends that the temporary order was entered in violation of her federal and state equal protection rights. Relator claims that she was denied the right to state her objections to the proposed order drafted by Nikoles. She claims that she objected to the order by telephoning the court's coordinator and telling her that relator would file a motion to sign relator's proposed temporary orders. We hold that this was not sufficient to apprise a trial judge of a party's objection. Relator was served with a copy of the proposed order on February 28 at 11:30 a.m. and knew that the respondent had ordered Nikoles to submit an order by 4:00 p.m. on March 1, but did not file any response until her March 6 motion to enter temporary orders. Moreover, relator has not shown that respondent in any way prohibited relator from filing her objection to Nikoles' order. Indeed, the court allowed relator to urge her objections to the proposed order in two subsequent hearings, and even suggested altering the terms of custody, which relator rejected. Thus, it is clear that respondent gave due consideration to relator's objections.

Finally, relator contends that the respondent clearly abused his discretion in entering temporary orders giving Nikoles custody of the child. Again, this contention is predicated on the allegation that Nikoles has no standing to sue and, therefore, has no legal right to custody of the child. We hold that relator has failed to demonstrate an abuse of discretion in entering the temporary orders.

We overrule relator's motion for leave to file petition for writ of mandamus.